89 So.2d 231

**Grady W. NOAH**

v.

**STATE.**

**2 Div. 900.**

Court of Appeals of Alabama.

June 19, 1956.

Rehearing Denied Aug. 14, 1956.

Walter G. Woods, Tuscaloosa, for appellant.

John Patterson, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

PRICE, Judge.

This prosecution for a violation of the provisions of Title 8, Section 69(1), Code 1940, originated in the Justice of the Peace Court on an affidavit and warrant. The charge in the affidavit was that "the offense of Did fish a gill net in a private lake (Big Keyton Lake) without permission has been committed in said County by Grady W. Noah." From a judgment of conviction in that court an appeal was taken to the circuit court where a jury found him guilty as charged and assessed a fine of $200. As additional punishment the court sentenced defendant to the county jail for 20 days.

■ In the circuit court the Solicitor, although not required to do so under Section 56, Title 8, Code 1940, filed a complaint charging that defendant did "unlawfully, catch or kill, or attempt to take, catch or kill fish by means of a net or seine in a private pond or lake of Big Keaton Fishing Club the property of others in said State and County without consent of the owners thereof."

Defendant filed a motion to strike the Solicitor's complaint on the ground there was a variance between it and the original affidavit. The court overruled the motion. The defendant then interposed a demurrer to the complaint, which was overruled.

■ The court's ruling in each instance was proper. Aside from the fact that we are of the opinion the complaint in the circuit court was not a departure from the affidavit in the Justice Court, and that the complaint was not subject to the grounds of demurrer interposed, we conclude, the statement by Judge Simpson in Cusimano v. State, 31 Ala.App. 99, 12 So. 2d 418, 419, applies with equal force here: " * * * the original affidavit was sufficient upon which to rest the prosecution in the circuit court. * * * The solicitor's complaint was unnecessary, and whatever its defects (if any), the defendant was not thereby prejudiced."

■ The trial Judge denied appellant's counsel the right to ask the prospective jurors, on voir dire, this question: "I'd like to know if any of them have been on a jury on which they voted for conviction for any offense?"

■ "The rule in this state is that, the extent of the examination of prospective jurors upon their voir dire rests in the sound discretion of the trial court." Leath v. Smith, 240 Ala. 639, 200 So. 623, 625. See also Redus v. State, 243 Ala. 320, 9 So. 2d 914; Logan v. State, 251 Ala. 441, 37 So.2d 753. We find no abuse of the court's discretion here.

Section 69(1) of Title 8, Code 1940, provides in pertinent part:

"1. It is hereby made unlawful for any person to take, catch or kill, or at-

tempt to take, catch or kill fish, or aid in the taking, catching or killing of fish of any species by the means or use of a seine, net, trap or any similar or other device which may be used for taking, catching, killing or stunning fish, or by the use of hook and line, rod and reel, or by use of dynamite or other explosives, or by the use of any poison, poisonous substance, fishberries, lime or other deleterious or poisonous matter in any private pond, private lake, private pool or private reservoir of this state, except as otherwise specifically provided herein.

"2. Any person who violates any of the provisions of subsection 1 of this section at any time shall be guilty of a misdemeanor and shall, on conviction, be fined not less than twenty-five dollars nor more than one hundred dollars, but if the violation be for seining, netting, dynamiting or poisoning fish in such private bodies of water, the fine shall be not less than two hundred dollars nor more than five hundred dollars and the convicted violator may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than six months at the discretion of the court.

"3. The provisions of this section shall not apply to the owner of any private pond, private lake, private pool or private reservoir or to any member of his family or his duly authorized agent, lessee or any other person holding from the owner specific written authorization, or any person who accompanies the owner or person in possession or control of such private body of water. * * *"

Section 68 of said Title 8 defines public and private waters. Private waters are declared to be, "any body of water wholly on lands held in fee or in trust, or under lease by any one person, firm or corporation, * * *."

The State's evidence tended to show that appellant, his wife and another man were observed by E. K. Elledge, a game and fish warden, as they were running gill nets in Big Keaton Lake, a privately operated lake. When arrested defendant had 350 to 400 pounds of fish. He admitted he did not have a permit to fish in the lake.

Officials of the Big Keaton Fishing Club testified the lake and all the lands surrounding it belong to the heirs of a Mr. Allen. It is a natural lake with no dams around it. The club has had the lake rented continuously since 1930. Appellant was not a member of the club and had not been granted a permit to fish in the lake. A receipt for $250 in full payment of rents from April 1, 1954, to April 1, 1955, for Big Keaton Lake, together with a strip of land surrounding the lake 50 feet wide from normal water level, signed "Bessie McCrossin Hill, individually and as agent for other owners of said lake and lands," was introduced in evidence.

Appellant testified he went to the lake with Mr. Lewis, the agent of the club, who, he thought, was the caretaker. Mr. Lewis had guests from Birmingham and defendant furnished fish for a fish fry. He admitted that he was fishing in the lake and that he did not have permission from the club. He said he had heard of the club but didn't know the lake was private.

In rebuttal the State introduced testimony to the effect that defendant had requested permission from the club to fish in the lake some two years previously but his request had been refused. It was also shown by Mr. Ingram, Secretary-treasurer of the club, that Mr. Lewis looked after the farming interest of the owners of the land, which comprised some 3,900 acres, but that he was not employed by the club, and had nothing whatever to do with the lake.

As to the public or private character of the lake, Mr. Elledge testified that it covers about 30 acres of land, is a quarter of a mile

from the river and does not join it by a tributary. If the river gets high enough it sometimes runs into the lake, but it was not spilling into the lake on this occasion.

Mr. M. C. Marll, lock tender from lock 9 on the river, called as a witness by defendant, testified he kept a record of the rise and fall of the river; on January 4th the upper gauge showed a reading of 22.5 feet, which is about 3½ feet higher than it is in dry weather; in extremely high water he has been able to go to Big Keaton Lake from the river, but could not do so not at this stage.

Defendant testified the water was five or six feet high in the lake and could be reached from the river at the time he was arrested.

■ The conflict in the evidence presented a question of fact for the jury's determination as to the question involved, and the trial court's action in overruling the defendant's motion to exclude the evidence, made at the conclusion of the State's testimony in chief and his refusal to give the affirmative charge at defendant's request, was without error. The evidence was ample to sustain the conviction and the motion for a new trial based on the ground that the verdict and judgment was contrary to the great weight of the evidence, was properly overruled.

■ As one of the grounds for his motion for a new trial counsel asserts that appellant did not plead to the information or accusation against him, and at the hearing in support of his motion, he introduced oral testimony as well as the Judge's bench notes.

The judgment entry reads:

"Comes then Honorable Blanchard McLeod, Solicitor, who prosecutes for the State of Alabama, and also came the Defendant, Grady W. Noah, in his own proper person, and by his attorney, Honorable Walter G. Woods, and the Defendant being duly arraigned upon such information, the Honorable Walter G. Woods did appear before and address the jury in response to said arraignment, and the court having instructed the jury that the Defendant had plead not guilty to the information."

Obviously, this statement must be taken to mean either that the defendant had entered a plea of not guilty or that he stood mute and the court entered a plea of not guilty for him, as provided by Title 15, Section 276, Code 1940.

■ The "minute entry showing the judgment constitutes the final record of the judgment", Jordan v. State, 16 Ala.App. 51, 74 So. 864, 865, and it cannot be aided or contradicted by bench notes. Calvert v. State, 26 Ala.App. 189, 155 So. 389; Lockhart v. State, 34 Ala.App. 297, 39 So.2d 40.

■ Insistence is made that the statute, Section 69(1), Title 8, Code, is void for ambiguity and indefiniteness, in that a different punishment is provided if the violation be "for seining, netting, dynamiting or poisoning fish." Subd. 2. This insistence is without merit.

Counsel for defendant insists the venue was not proven and that requested charges 2 and Z on this point were improperly refused.

■ These instructions are that before the jury can convict the defendant they must believe to the requisite degree that the offense was committed in Hale County, but they fail to require the jury's conclusion to be based or hypothesized upon "belief 'from the evidence.'" Bush v. State, 211 Ala. 1, 100 So. 312, 313; Smith v. State,

230 Ala. 18, 158 So. 808; Johnson v. State, 257 Ala. 644, 60 So.2d 818.

But aside from this, the evidence, on the question of venue, showed the lake to be about a half mile long and 150 yards wide. The Tuscaloosa-Hale County line crosses the lake, with the biggest part of the lake lying in Hale County, and some of the north end in Tuscaloosa County. Mr. Elledge testified the defendant, when he first saw him, was running the net on the upper end way out in the lake, approximately 75 yards from the bank. He did not, of his own personal knowledge, know where the county line was or whether he saw defendant in Tuscaloosa or Hale County.

Further, in charge, the trial court called to the jury's attention the provisions of Section 94, Title 15, Code 1940: "When an offense is committed partly in one county and partly in another, or the acts, or effects thereof, constituting, or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county", and Section 95 of said Title: "When an offense is committed on the boundary of two or more counties, or within a quarter of a mile thereof, or when it is committed so near the boundary of two counties as to render it doubtful in which the offense was committed, the jurisdiction is in either county."

The question of venue was for the jury's determination under all the evidence in the case.

Refused charges 5 and 8 were mere statements of legal principles, without instruction as to their effect upon or application to the issues in the case. Holloway v. State, 37 Ala.App. 96, 64 So.2d 115.

There being no reversible error in the record, the judgment is affirmed.

Affirmed.