167 So.2d 694

**Donald Crawford GREEN**

**v.**

**STATE.**

**6 Div. 959.**

Court of Appeals of Alabama.

June 30, 1964.

Rehearing Denied Aug. 18, 1964.

Nabors & Torbert, Gadsden, for appellant.

Richmond M. Flowers, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The appellant, Donald Crawford Green, was indicted by the October, 1962, Term of the Cullman County Grand Jury on a charge of burglary of the Holly Pond High School Building of the Cullman County Commission on Education. He was found guilty as charged and sentenced by the court to a term of ten years in the State Penitentiary. Motion for a new trial was over- ruled and appellant thereafter appealed to this court.

The evidence tends to show that Mr. Hollis Tucker, Principal of the Holly Pond High School, heard a noise on October 12, 1962, between the hours of 1:45 and 2:15 A.M. over an intercom system which was connected from the Holly Pond High School Building to his home nearby. Mr. Tucker further testified that the noises were sounds of voices and a sound of metal striking against metal. Upon hearing the noises he called the sheriff and requested that officers be sent to the school.

Tucker also testified that a window in the building had been broken and the door to the school office was pried open. The combination to the safe had been removed and a hole about 16 inches square was found in the inner office wall through the concrete block and into the safe. Mr. Tucker stated that debris from the concrete blocks was "all over the floor" and that the office and vault were painted either "light blue or green". A sledge hammer was found in the hall of the building. Mr. Tucker further stated that when he left the building on October 11, 1962, the door was closed and locked and the window was not broken and the office was in good order.

Upon being notified Sheriff W. C. Waldrop went to the scene and stated that when he arrived, he saw two men run out of the back door of the Holly Pond High School. Later he followed two sets of men's tracks from a green and white Chevrolet automobile parked north of Holly Pond in a cemetery to a point immediately north of the Holly Pond High School.

At about 3:00 A.M., October 12, 1962, Officer Charles Schafer arrested J. D. Armstrong about a half mile from the school. The appellant and one J. C. Doyle "Jaybird" White were arrested together the same morning at about 7:00 A.M. about two and one-half miles west of the Holly Pond School by Officer Pete Patterson.

After the appellant was arrested and placed in the Cullman County Jail, he was

asked by State Investigators E. B. Watts and Roy McDowell to turn over to them his clothes and shoes, which he did. These articles were taken to the office of Dr. Robert Johnson, State Toxicologist, Birmingham, Alabama, examined by him and introduced into evidence at the trial. Dr. Johnson testified that in the pockets of the pants and shirt worn by appellant he found "small fragments of concrete and several had light green paint on it". Plaster casts, marked Exhibit 6, were made of the shoe prints found at Holly Pond High School and compared with the shoes of appellant, which were marked Exhibit 4. Dr. Johnson testified that the plaster cast footprint, identified as Exhibit 6, was made by appellant's shoe, identified as Exhibit 4.

James Fowler, a highway patrolman, testified that he saw the appellant, J. C. White, and J. D. Armstrong together at a Chili Parlor in Gadsden, Alabama, which is "about 35 or 40 miles" from the Holly Pond High School, at about 11:00 P.M. on October 11, 1962.

State Investigator, Roy C. McDowell testified that on the morning of October 12, 1962, when he was in the County Jail of Cullman County, Alabama, J. C. Doyle White gave him a billfold and some other articles; that in the billfold he found a tag receipt for a 1935 Chevrolet two-door automobile made to J. C. White; that he compared the serial number of the automobile shown on the tag receipt with a 1955 Chevrolet automobile at the jail and that the serial numbers were the same.

Officer Charles Schafer testified that on the morning of October 12, 1962, he was near the Holly Pond High School and that he heard a noise and chased and apprehended a man who was later identified as J. D. Armstrong. He testified further that he then took Armstrong to the school and placed him in the custody of Sheriff W. C. Waldrop.

Sheriff Waldrop testified that he had a conversation with J. D. Armstrong at about 3:00 A.M. on the morning of October 12, 1962, and that Armstrong made a voluntary statement in which he told him that the 1955 Chevrolet had been loaned to him by J. C. White, but that White was not at the Holly Pond High School and that he had left him in Gadsden, Alabama.

The appellant presented no witnesses in his behalf.

In his closing argument, the circuit solicitor made at intervals the two following statements in referring to appellant: "He has not tried any case here in defense" and, later in argument, "What was he doing at 1, 2, 3, 4, 5 and 6 o'clock in the morning with his pants wet with no explanation to the officers, 40 or 50 miles from his home?".

To such statements by the circuit solicitor, counsel for the appellant made timely objections. We cannot agree with appellant's contention that either of these remarks constituted comment by the solicitor or the failure of the appellant to testify in his own behalf. Suffice it to say that even if the later remarks had constituted such reference, the taint therefrom was sufficiently eradicated by the following admonition to the jury by the trial judge:

"Gentlemen of the jury, you heard what the Solicitor said, and the Solicitor said, 'What was he doing over there at those hours without any explanation to the officers?' The defendant has no duty to explain why he was over there, the duty is not on him to explain and you should not ask yourselves any question why he should explain, because he doesn't have to, and you should not take any remarks by the Solicitor with any implication like that that the defendant has to explain anything. He doesn't have to do it, Gentlemen of the jury."

Troup v. State, 32 Ala.App. 309, 26 So.2d 611; Welch v. State, 263 Ala. 57, 81 So.2d 901; Littlefield v. State, 36 Ala.App. 507, 63 So.2d 565; Dixon v. State, 39 Ala.App. 575, 105 So.2d 354; Speakman v. State, 41 Ala. App. 662, 148 So.2d 651; Davis v. State, 259 Ala. 212, 66 So.2d 714.

Appellant further contends that the trial court committed error by allowing Sheriff W. C. Waldrop to testify to parts of a conversation he had with one J. D. Armstrong, an alleged Co-conspirator, a few hours after the crime. The testimony of Sheriff Waldrop is as follows:

"Q. Tell the jury as best you recall the conversation you had with Mr. J. D. Armstrong, I believe, you said in your car, sitting at or near Holly Pond School on the early morning of October 12th, 1962?

"MR. TORBERT: We renew our objection to this and assign the same grounds as assigned to the question previously asked by Mr. Riley before I took this witness on voir dire.

"THE COURT: Objection overruled.

"MR. TORBERT: We except to the ruling of the Court.

"A. I asked J. D. What his name was and where he lived?

"Q. What did he tell you?

"A. That he lived in Gadsden, I asked him whose car he had and he said a friend's, and I said, where does your friend live and he said, In Gadsden. Then I said, What is his name, and he said, He is just a friend. I said he must be a good friend if he loaned you a car, so you should know his name, What is it? Then I said I can radio and find out who the car belongs to and he said, Well, it is J. C. White's and I said, Is that the one better-known as 'Jay Bird'—

"MR. TORBERT: We object to any further statements and move to exclude that last statement as to what the Sheriff said. We have already objected to any statements made by J. D. Armstrong and we object to the Sheriff's testimony as to what he said.

"THE COURT: Objection overruled.

"MR. TORBERT: We except to the ruling of the Court.

"A. * * * You call him 'Jay Bird', and he said, Yes, and I asked him, Is he over here with you and he said, No, he is not. Well, I was communicating with other cars and in a little bit he said, Why do you want to punish those boys, your deputies, there is nobody out there, I will promise you they are not. I said 'Jay Bird' is not out there, and he said, No, I left him in Gadsden, and you shouldn't treat those people like that, keeping them in the cold and dark, you might as well let them come on in.

"Q. How long was it, if you know, from the time you had this conversation with J. D. Armstrong before J. D. Doyle 'Jay Bird' White and this defendant were arrested up by Mrs. Lovell's house?

"MR. TORBERT: We object to that.

"THE COURT: Objection sustained.

*    *    *    *    *    *

"Q. What time of night was it you had this conversation with J. D. Armstrong?

"A. Around, or a little after 3:00 o'clock.

"Q. Did you see this defendant, D. C. Green that same morning?

"A. Yes.

"Q. Where?

"A. Holly Pond High School.

"Q. Approximately what time of morning was that?

"A. It was around 7:00 o'clock.

"Q. Did you see J. D. Doyle 'Jay Bird' White, also, that morning?

"MR. TORBERT: We object on the grounds it is incompetent, irrelevant, and immaterial.

"THE COURT: Objection overruled.

"MR. TORBERT: We except to the ruling of the Court.

"Q. Who else was with them when you saw them?

"A. All the officers just about were there, they were sitting in a car. Mr. Tucker and another deputy or investigator were together, I have forgotten who else."

■ The testimony as set out above was continuously objected to by the appellant as being statements made by a co-conspirator after the commission of the crime and out of the presence of the defendant. As shown above, the court sustained the objection to the only question that made a reference to the defendant Green. We do not think the questions making reference to White were prejudicial to the appellant even though he was arrested in the presence of White the following morning.

Cases dealing with this proposition lead the Court to believe that even if such were error, it was error without injury.

In Mikell v. State, 242 Ala. 298, 5 So.2d 825, the court said that the error must be prejudicial to the substantive rights of the defendant to require a reversal. Lakey v. State, 258 Ala. 116, 61 So.2d 117. In the late case of Stain v. State, 273 Ala. 262, 138 So.2d 703, the Alabama Supreme Court said that the doctrine of harmless error is to be cast upon the party complaining, the burden of showing that the errors have substantially affected his legal rights. " * * * But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant." Tit. 15, Sec. 389, Code of Alabama, 1940.

In view of the above, we are of the opinion that if the introduction of the conversation into evidence was error, it was harmless error and it did not prejudice the substantive rights of the defendant.

■ The appellant further assigns as error the failure of the State to make proof of the following allegation in the indictment charging that the defendant did, with intent to steal, break into and enter a shop, store, warehouse or other building, to-wit, "Holly Pond High School of the Cullman County Commission on Education, which is specially constructed or made to keep goods, wares, merchandise or other valuable thing, to-wit, typewriters, chairs, adding machines * *" constituted fatal error.

The record shows that the following pertinent testimony of Mr. Hollis Tucker, Principal of the Holly Pond High School, was sufficient to establish a question for the trial jury as to the proof of such allegation:

"Q. Who is in possession or charge of Holly Pond High School?

"MR. TORBERT: We object to that, it would be a conclusion on the part of the witness.

"SOLICITOR: He can testify as to this.

"THE COURT: Objection overruled.

"MR. TORBERT: We except to the ruling of the Court.

"A. Your Honor, I am.

"Q. Who is in over-all charge and possession of it?

"A. The Cullman County Commission on Education, Board of Directors, and the principal.

"Q. Do you keep, or was there some on this particular night, merchandise or property of value in the Holly Pond High School?

"There was.

"Q. Did you keep desks there?

"A. We did.

"Q. On the night in question?

"A. Yes.

"Q. Were there typewriters there, and files of different types of value in the Holly Pond High School?

"A. There was.

"Q. And adding machines?

"A. There were."

█ The objection as made above was properly overruled as the witness was competent to testify as to said possession. See White v. State, La.App., 160 So.2d 496.

Assigned as error by the appellant was the act of the state investigator in procuring from the defendant his shoes and other articles of clothing. The shoes were used for the purpose of comparison with plaster casts of shoe prints found in the area of the scene of the crime. Appellant contends that the introduction into evidence of the result of the comparison was unlawful as compelling the defendant to give evidence against himself in violation of his constitutional rights.

The record affirmatively shows that the articles of clothing were asked for by the investigating officers and relinquished by the defendant voluntarily. On cross-examination of Mr. E. B. Watts, State Investigator, counsel for the defense elicited the following testimony:

"Q. When you went to jail and talked to Mr. Green, did you introduce yourself to him, or tell him who you were?

"A. I don't remember.

"Q. Did you show any identification, any badge, or anything of that kind?

"A. I don't remember.

"Q. So far as you know, he didn't even know who you were?

"A. Yes, I assume he did, he knew the fellow with me and spoke to him.

"Q. Did you ever tell him who you were or anybody in your presence tell him?

"A. Yes.

"Q. Who did?

"A. McDowell.

"Q. Did he tell him you were a State Investigator?

"A. I believe he did.

"Q. What did you tell Mr. Green about this clothing, did you say: 'Mr. Green please give me your clothes,' or 'Mr. Green, give me your clothes?'

"A. It was in the nature of 'I would like to have your clothing.'

"Q. He was in custody at the time, in jail under arrest, so far as you know?

"A. Yes, he was in custody.

"Q. You don't actually know if he was under arrest?

"A. No.

"Q. And Mr. McDowell told him you were a State Investigator from Decatur, and you would like to have his clothes. * * * Where were his shoes?

"A. In the cell.

"Q. Were they on or off.

"A. Off.

"Q. His pants weren't muddy, at the time you got them in jail. The mud had been washed off?

"A. Part of it, they were soaking wet, he was wringing water out of them.

"Q. But the mud wasn't all over them?

"A. I didn't microscopically examine them, there was mud on them.

"Q. What did you do with them?

"A. Brought them to the Sheriff's office."

■ We are of the opinion that the trial court was without error in finding under this evidence that appellant was not compelled to take off his clothes and shoes and give them to the officers but that he did so voluntarily upon the officer's request. Where the defendant voluntarily relinquishes his clothing for examination, the results of such examination are admissible in evidence. Moss v. State, 146 Ala. 686, 40 So. 340; Webb v. State, 11 Ala.App. 123, 65 So. 845; Myhand v. State, 259 Ala. 415, 66 So.2d 544.

■ Appellant further assigns as error the action of the trial judge in his remarks and attitude displayed toward counsel for the defendant and the further action of the trial judge in asking questions of witnesses to establish the State's case and suggestions to the solicitor as to how he could ask questions as constituting prejudicial error.

The remarks of the judge were not so prejudicial as to violate the substantive rights of the defendant.

The following transpired between the court and the defense counsel:

"MR. TORBERT: We object to the Solicitor's testifying.

"THE COURT: If you want to find out, cross-examine the witness.

"MR. TORBERT: Your Honor, that is what I am attempting to do.

"THE COURT: Go ahead, proceed forthwith.

"MR. TORBERT: At this time, your Honor, we except to the remarks of your Honor and ask for a mistrial on the ground that your remarks are highly improper for this jury.

"THE COURT EXCUSES THE JURY.

"THE COURT: I have been lenient toward you this morning.

"MR. TORBERT: I want this in the record. If you are going to admonish me if it please the Court, I was excepting to the statements of the judge to me in regard to my method of conducting my cross-examination of the witness. My method of objecting to the interjection of statements by the Solicitor, and I move for a mistrial on the ground of the prejudicial affect which the Court's attack directed toward me and the remarks made toward me by the Court are prejudicial to the defendant.

"THE COURT: Objection overruled."

■ When the court admonishes counsel, if out of the presence of the jury, there is no reversible error. Shiflett v. State, 38 Ala.App. 662, 93 So.2d 523.

■ A conspiracy to commit a crime may be proved by circumstantial evidence and a wide latitude is allowed in the proof thereof extending to everything said, done, or written by either of the conspirators in the execution or furtherance of their common purpose. Morris v. State, 17 Ala.App. 126, 82 So. 574.

■ Testimony of the Highway Patrolman James Fowler that the appellant, J. C. White, and J. D. Armstrong were seen by him together in a chili parlor in Gadsden, Alabama, approximately three hours before the burglary of the Holly Pond High School was admissible as a jury question of a conspiracy between the above parties to commit the crime charged. It is a well established rule of law that when a prima facie conspiracy between two or more parties to commit a crime is established, evidence against one co-conspirator in the furtherance or commission of such crime is admissible against the co-conspirator. Hunter v. State, 112 Ala. 77, 21 So. 65; Dawkins v. State, 20 Ala.App. 54, 100

So. 619; Aplin v. State, 19 Ala.App. 604, 99 So. 734.

Appellant further contends that the trial court erred in allowing the introduction into evidence of State's Exhibits Nos. 1, 2, 3, 4, 5, 6, 7, 8, 11 and 12 in that there was insufficient identification of these exhibits due to a break in this chain of custody. All of the above numbered exhibits were properly marked for identification and were delivered to the office of Dr. Robert Johnson, State Toxicologist, in Birmingham, by State Investigator E. B. Watts for examination by him. Dr. Johnson testified that the exhibits were not delivered directly to him but to one of his assistants, Mr. Wilkes, who placed them in a sealed cabinet and gave them to Johnson with the seal unbroken, and that he examined each exhibit.

The chain of custody of the foregoing exhibits was sufficient to establish a jury question as to the accuracy of their identification. The exhibits were properly admitted into evidence to connect the accused with the commission of the offense. Ragland v. State, 37 Ala.App. 542, 71 So. 2d 535; Willis v. State, 37 Ala.App. 185, 66 So.2d 753; Aaron v. State, 271 Ala. 70, 122 So.2d 360; Jemison v. State, 40 Ala.App. 581, 120 So.2d 748; Lackey v. State, 41 Ala.App. 46, 123 So.2d 186.

The trial court has the right to read to the trial jury in its charge the law and the statutes of Alabama relative to the alleged crime. Code of Alabama, 1940, Tit. 7, Sec. 270.

The charges refused the defendant by the lower court were inaccurate statements of the law or were fully covered either by the court's oral charge or given written charges.

This cause is due to be and the same is hereby

Affirmed.