258 So.2d 923

**Joe POWELL**

v.

**STATE.**

**3 Div. 80.**

Court of Criminal Appeals of Alabama.

Feb. 29, 1972.

William P. Haney, Jr., Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

HARRIS, Judge.

On March 2, 1970, Appellant was convicted for possession of drugs denounced by the Alabama Drug Abuse Law as set forth in Section 5(c) of Act No. 252, General Acts of Alabama, 1967, and was sentenced to a term of four (4) years in the penitentiary. He gave notice of appeal and requested suspension of sentence pending appeal. Sentence was suspended and bond fixed at $8,000.00. Being unable to make bond, he appeared in open court with his attorney on March 5, 1970, and withdrew his request for suspended sentence and was on that date ordered by the court to begin serving his sentence pending appeal. Appellant was unable to employ counsel and the trial court appointed counsel to represent him in the court below and on appeal. Also, a transcript of all proceedings was furnished Appellant, all in compliance with Act No. 525, Acts of Alabama 1963, Vol. 2, p. 1129, Title 15 Section 380(14)–380(25), Code of Alabama 1958, Recompiled, and Act No. 526, Acts of Alabama 1963, Vol. 2, p. 1136, Title 15 Section 318(1)–318(11), Code of Alabama 1958, Recompiled.

The record reflects that on August 16, 1969, Appellant was arrested on the porch of his home at 337 Clayton Street, in the City of Montgomery, on a warrant charging him with the offense of Assault and Battery. The arresting officer gave him the warnings sanctioned in *Miranda,* gave his person a cursory search for weapons and put him in the patrol car and carried him to the City jail. According to the arresting officer, Sterling G. Shipman, Appellant was "pretty drunk" and Shipman steadied him to the police car.

At the City jail, Appellant was delivered to Police Officer A. J. Kenda, who was the Security Officer on the floor at that time. Kenda searched the clothing of Appellant in the presence of the Desk Officer, Jesse B. Mainor, removing all items of personal property and gave them to Mainor to be inventoried in the name of Joe Powell. In one of Appellant's pockets was a vial or bottle containing approximately fifteen (15) assorted tablets which was placed on the Booking Desk with Appellant's name written on a piece of paper. Mainor attempted to call the Vice Squad but was unable to locate them before his tour of duty was over. Police Officer William Morgan Harris relieved Mainor on the Booking Desk and subsequently contacted the Vice Squad and Officers Barfoot and Terry came to the jail where they received the bottle of pills and the paper bearing Appellant's name. Officer Charles Paul Barfoot physically took charge of the evidence and placed it in an envelope used by the Police Department for sealing evidence. The envelope was sealed, taped and stapled and cross X marks made over the gum sealed part and initialed C.P.B. The envelope was then carried to the Office of the Vice Squad and put in a desk drawer and the office locked. Lt. Paul Headley was in charge of the Vice and Narcotics Division of the Montgomery

Police Department in August of 1969. Lt. Headley delivered the sealed envelope to the Department of Toxicology in the City Hall on August 19, 1969, and got a signed receipt for it bearing a number that was identical with the number placed on the envelope in the Office of the Toxicologist. At the trial, Headley identified the envelope and bottle that he delivered to the Toxicologist.

In August, 1969, Carlos L. Rabren was employed as a Toxicologist with the State of Alabama, Department of Toxicology and Criminal Investigation at Auburn. Rabren received a degree from Auburn University in 1966 and is (was) now working towards a Master's Degree in Toxicology with a minor in Pharmacology, which he expected to receive in August, 1970. He made an analysis of the tablets made the basis of Appellant's conviction. He testified:

"The envelope when I first saw it was sealed as you see it on the rear with a clear tape and the initials across the seal and I opened the envelope on this end.

"As I observed it, there were no openings in the envelope. It had been mutilated to the extent that it was creased and crushed in places."

Rabren testified that he made an examination of the capsules and spansules in the vial to determine if there were any illegal active drug ingredients contained in them. There were four different types of capsules or tablets and

"The examination revealed first that the five small white capsules contained in this bottle were found to contain amphetamine and are consistent in the physical and chemical characteristics with bi-amphetamine as produced by the Strassenberger Laboratory. The analyses of the two pink, heart shaped tablets which was contained in the vial revealed that they also contained amphetamine. The laboratory analyses of the brown, clear Spansules which were found to contain light green, orange and yellow as well as white pellets revealed the presence of amphetamine and phenothiazine."

Further,

"Q. I will ask you whether either of the terms depressant drugs or stimulant drugs would be applicable to the capsules which you examined?

A. Yes, sir. Stimulant would be applicable to the capsules and the tablets.

Q. Now, during your examination was it necessary to use any of the items found in there?

A. Yes, it was."

'Q. How many pills did you find and how many was it necessary to use in your analyses?

A. We found that there were five of these solid white capsules and we consumed one in the analyses and there were two of the heart shaped pink tablets and we consumed one complete of those and there was one of these brown and clear Spansules and it was consumed in the analyses and there were seven of the clear and white Spansules and again we used one completely."

We have set out the evidence in this case in some detail for the reason that Appellant urges a reversal on two grounds:

1. Refusal of the trial court to exclude the State's evidence.

2. Overruling Appellant's objection to the introduction in evidence of the State's exhibits one and two—being the envelope and the bottle of pills or tablets.

The evidence adduced by the State was uncontradicted as there was not a thread of testimony offered on behalf of Appellant. The probative force and weight of the evidence was for the jury and the court

did not err in overruling the Motion to exclude.

■ Appellant strenuously insists that a sufficient predicate was not made for admission into evidence the capsules or tablets taken from his person while under arrest and in the City jail contending there was insufficient identification of the State's exhibits due to a break in the chain of custody. The evidence as to custody and possession of Exhibits One and Two unequivocally shows there is no missing link in the chain of identification. Identification and continuity of possession were sufficiently established, affording ample assurance of the authenticity of the capsules or tablets and the analyses conducted by the Toxicologist. Green v. State, 42 Ala.App. 439, 167 So.2d 694; Dennison v. State, 259 Ala. 424, 66 So.2d 552; Lackey v. State, 41 Ala.App. 46, 123 So.2d 186; Jemison v. State, 40 Ala.App. 581, 120 So.2d 748; Aaron v. State, 271 Ala. 70, 122 So.2d 360; 22A C.J.S. Criminal Law § 709; 29 Am.Jur.2d, Section 774, page 844.

In *Dennison* the Supreme Court said:

* * * "The preliminary proof identifying and describing the considered articles fully complied with the rule and under no sort of theory would the trial court have been warranted in refusing their admission." * * *

The above is fully applicable to the instant case.

Mindful of the duty enjoined upon us by the provisions of Section 389, Title 15, Code of Alabama 1940, we have carefully searched the record for errors injuriously affecting the substantial rights of Appellant and have found none.

■ In his petition for indigent transcript and appointment of attorney, Appellant states that he was sentenced to serve three (3) years in the State Penitentiary, and in the order granting the petition, the trial judge recited that the defendant (Appellant) was sentenced by "the undersigned Circuit Judge to a term of three (3) years in the State Penitentiary."

The judgment entry shows that Appellant was sentenced to a term of four (4) years. In this instance, the judgment entry speaks absolute verity and controls. Noah v. State, 38 Ala.App. 531, 89 So.2d 231; Keeton v. State, 280 Ala. 140, 190 So.2d 694, certiorari denied 388 U.S. 914, 87 S.Ct. 2123, 18 L.Ed.2d 1354.

The refused charges do not state correct principles of law or were abstract or were fairly and substantially covered in the given charges and the oral charge of the Court. The Court in its oral charge failed to charge the jury that the law requires unanimity before any verdict can be returned. Appellant did not except to that portion of the oral charge and did not request a written instruction on the requirement of a unanimous verdict.

On Page Three of the Record, there appears a "Motion for the Affirmative Charge". This writing did not meet the statutory requirement that charges must be given or refused in the terms in which they are written. Emergency Aid Ins. Co. v. Plummer, 35 Ala.App. 520, 49 So.2d 680.

This Court and the Supreme Court have repeatedly held that the correctness of the trial court's oral charge cannot be raised for the first time on appeal. Alabama Digest, Criminal Law, ☞1038(1).

No error requiring reversal has been found in the record.

Affirmed.

All the judges concur.