308 So.2d 737

Milton **CHRISTIAN**

v.

**STATE.**

**6 Div. 728.**

Court of Criminal Appeals of Alabama.

Oct. 29, 1974.

Rehearing Denied Nov. 26, 1974.

Ralph C. Burroughs, Public Defender, Joel L. Sogol, Asst. Public Defender, Tuscaloosa, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

Unlawful possession of prescription drugs; $500.00 fine; nine months hard labor.

A. W. Clark and H. M. Turner were Tuscaloosa officers assigned to the West Alabama Narcotic Squad, and on August 17, 1973, they were riding in an unmarked vehicle near Gaylord's parking lot in Tuscaloosa, Alabama. On this occasion they observed Milton Christian drive more than half a mile, and noticed he constantly weaved from one side of the road to the other.

The officers turned their portable blue light on, but the appellant continued to drive another three hundred yards before stopping. As appellant got out of his car, the officers noticed he was staggering and his speech was slurred. After arresting him for D. W. I., Officer Clark found three vials in appellant's trouser pockets, which he handed to Officer Turner. Later at the West Alabama Narcotic Squad's office, the officers sealed and initialed the vials in one envelope, and a syringe, found in appellant's shirt pocket, in another. Both envelopes bearing the initials "A. W. C." were placed in the office safe. On August 20, 1973, the sealed envelopes were taken to the State Toxicologist's office in Birmingham by Officer Jimmy Adams, a third member of the squad. At that time, the squad was composed of five members, and only those officers mentioned, along with two sergeants, had access to the safe. At the trial, Officers Clark and Turner testified that the envelopes, vials, and syringe were in substantially the same condition as they were before being locked in the office safe.

The State Toxicologist testified that he received the sealed envelopes bearing the initials, "A. W. C.", from Officer Jimmy Adams on August 20, 1973, and they remained in his custody until the day of the trial. His examination revealed Talwin tablets in two of the vials. Talwin is a composition of Pentazocine, and traces of it were also found in the syringe.

Don Maughan, a pharmacist with ten years experience, confirmed the contents of Talwin in this testimony:

"Q. Are you familiar with what that substance—what Talwin contains, the chemical content of Talwin?

"A. Yes.

"Q. And what does that contain, sir?

"A. Pentazocine, 50 milligrams in a tablet. And there's thirty milligrams per cc in the liquid.

"Q. And in your position as a pharmacist, are you familiar with the requirements of dispensing Pentazocine or Pentazocine and Talwin?

"A. I didn't understand your question.

"Q. In your occupation as a pharmacist, are you familiar with the procedure and requirements of dispensing Pentazocine?

"A. Yes.

"Q. Do you dispense that over a counter, sir?

"A. On a prescription.

"Q. On a prescription. And—(interrupted)

"MR. BURNS: Now, Your Honor, we're gonna object and move to exclude that answer. Under this indictment, it requires prescription as required by law. And the best evidence, we move to exclude that the best evidence would be the—whatever the State statute or the Federal requirement that says it has to be dispensed by prescription, not from the testimony of this witness.

"MR. ANDRES: I don't think, Your Honor, that this would fit under the best evidence rule, as such, since we

aren't offering a document in this case. We're offering Mr. Maughan, a druggist of some ten years, as an expert familiar with the requirements of dispensing prescription drugs.

"THE COURT: We will take a couple of minutes recess * * *."

\*     \*     \*     \*     \*     \*

"Q. All right. And what is contained on the label of the bottles the Talwin comes in?

"A. It has a trade name of the drug, which is Talwin. Has the chemical name and it also has the warnings which it—has the directions at which it's to be taken and also a caution, Federal law prohibits dispensing without a prescription."

\*     \*     \*     \*     \*     \*

"THE COURT: As to the question before recess, I overrule.

"MR. BURNS: First, I want to move to exclude the witness's last answer in regard to the label on the bottle that he purchases on the basis that the best evidence in this case would be Federal regulation, which requires Talwin to be dispensed by prescription and not the reading or his memorization of what is on a bottle that has not even been introduced in Court.

"THE COURT: Overruled, sir."

The appellant admitted possessing the items in question, but explained the Talwin was prescribed and given to him by a Doctor Oliver who is now deceased. On one of his visits to the doctor, a friend, Tony Rubio, was present when appellant was given the tablets. About a year and a half before the arrest, appellant transferred the tablets to plastic bottles. He further testified the doctor did not give him the syringe.

On redirect examination of appellant, the following occurred:

"Q. Mr. Christian, you have produced a bottle when he was talking—question on cross-examination. Is this the bottle?

"A. That is the bottle.

"Q. That Dr. Oliver handed you on the date you testified to? Would you look at it?

"A. (Witness examines bottle). That's it.

"Q. This is the bottle?

"A. Yes, sir.

"Q. Would you read what is says on the bottle?

"A. It says Dr. Oliver. Milton Christian, Talwin. One if needed for pain, dispensed in office."

\*     \*     \*     \*     \*     \*

"Q. And this is the same bottle that was given you by Dr. Oliver?

"A. That's the same bottle. Let me see the cap a minute. (Examines bottle). That's the same bottle.

"MR. BURNS: We offer this.

"MR. ANDRES: I object, Your Honor, on the grounds that it has not been properly authenticated.

"THE COURT: Well, it goes to weight. I'll allow it."

I.

■ Appellant insists the court erred when it denied his motion to exclude the state's evidence, and argues that the state failed to prove a prima facie case. He alleges the prosecution did not prove any federal or state law, regulation or statute that Talwin cannot be dispensed without a prescription.

The offense in this case is denounced by Title 46, § 257(a31), Code ·of Alabama, which states in part:

"*Prescription drugs; illegal possession; penalty.*—Any person found in possession of a drug or medicine limited by law to dispensation by a prescription unless such drug or medicine was lawfully dispensed shall be guilty of a misdemeanor and upon conviction, shall be fined not more than one thousand dollars ($1,000.00) and in addition thereto, may be imprisoned in the county jail for hard labor for not more than one (1) year. * * *"

Tilte 46, § 257(a2) (*l*) provides:

"(1) Legend drug shall mean any drug, medicine, chemical or poison bearing on the label the words, 'caution, federal law prohibits dispensing without prescription,' or similar wording indicating that such drug, medicine, chemical or poison may be sold or dispensed only upon the prescription of a licensed medical practitioner."

In view of the pharmacist's testimony that Federal law prohibits Talwin from being dispensed without a prescription, it is our judgment that under Alabama law appellant's possession was unlawful. The trial court in the case was not in error when it did not require further proof. It was the Alabama statute that had been violated, and contrary to the appellant's contention, the only law governing this set of facts.

## II.

Appellant's second insistence was that the state failed to prove the chain of possession of items seized from the appellant. We do not agree. Powell v. State, 47 Ala.App. 582, 258 So.2d 923.

We have searched the record for error.

Affirmed.

All the Judges concur.