310 So.2d 501

**Wilbert Earl RUPERT, alias**

**v.**

**STATE.**

**6 Div. 826.**

Court of Criminal Appeals of Alabama.

April 1, 1975.

Frederick A. Erben, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Quentin Q. Brown, Jr., Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of the offense of selling heroin and received a sentence of fifteen years in the penitentiary. Prior to arraignment he was found to be indigent and counsel was appointed to represent him at all stages of his trial. He is in this court with a free transcript and trial counsel was appointed to represent him on appeal. He pleaded not guilty at arraignment.

Omitting the formal parts, the indictment reads as follows:

"The grand jury of said county charge that, before the finding of this indictment, WILBERT EARL RUPERT, Alias WILLIAM C. RUPERT, Alias WILBUR RUPTER, whose name is to the Grand Jury otherwise unknown, did on to-wit: December 28, 1973, while at or near 3301 Norwood Boulevard, Birmingham, Jefferson County, Alabama, unlawfully sell, furnish or give away 6.9 milligrams of heroin, a narcotic drug to John Allen Softley, contrary to and in violation of the provisions of Act No. 1407 of the 1971 Regular Session of the Alabama Legislature, otherwise known as the Alabama Uniform Controlled Substances Act and that such sale, furnishing or giving away took place subsequent to September 15, 1971, against the peace and dignity of the State of Alabama."

Mr. John Allen Softley was working as an undercover agent for the Birmingham Police Department in December, 1973, on assignment to the United Narcotic Detail Operation, commonly referred to as UNDO. His duties were to go out on the streets and mix with people and find out who was selling drugs and try to make buys.

Softley testified that he was introduced to appellant by his brother, Percey Rupert, on the afternoon of December 27, 1973, at the Crescendo Lounge located at 64th Place, South, and the Georgia Road. At this time and place, Softley asked appellant if he knew where he "could cop some skag", and appellant said yes, but he couldn't get it that day. Appellant told Softley, "Maybe, tomorrow. Try me tomorrow."

On December 28, 1973, Softley drove back to the Crescendo Lounge at 5:45 P.M. and saw appellant on the sidewalk in front of the lounge and he asked him if he was "ready to cop the skag for me." Appellant replied that he was ready but they would have to go over to 3301 Norwood Boulevard. Appellant got in the car and Softley drove to this address. When they arrived at this address, appellant asked him how much heroin did he want and Softley said, "About two quarter spoons." Appellant said he could get it. Softley asked him how much it would cost and appellant said $100.00. The price was agreed to and appellant got out of the car and went in the house. He returned in a few minutes and handed Softley two small aluminum foil packages. Softley turned on the lights of his car and unwrapped both packages and saw that each package contained a light brown powder. He gave appellant five twenty-dollar bills. Appellant took the money and went back in the house and stayed about five minutes. Softley put the two packages in his shirt pocket. Appellant came back to the car and Softley drove him back to the Crescendo Lounge and left him there.

Softley then proceeded directly to the UNDO Headquarters and delivered the two aluminum foil packages to his immediate supervisor, Sergeant George Hayes. Sergeant Hayes opened both packages and performed a field test for heroin on each package in the presence of Softley. After the field test was conducted both packages were re-wrapped and put in an envelope and sealed. Both officers put their initials, "GH" and "JAS", on the envelope and placed tape over their initials. Also on the envelope Hayes wrote the defendant's name, the date and time it was turned over to him, the name of the person making the purchase, the name of the suspected narcotic, the location of the purchase, the date and time of the purchase and the cost price of the purchase. Hayes locked the envelope in the trunk of his car where it stayed until January 3, 1974, when he personally delivered it to the Department of Toxicology in Birmingham at 2:40 P.M. and got a receipt for the envelope. The receipt bore the initials "RJ", "CS" and was signed by Wayne Burrows. The initials "RJ" were identified to be Robert Johnson, Assistant State Toxicologist in charge of the Birmingham office. The initials "CS" represented a Mr. Smith who worked in the laboratory.

Mr. Gerald Wayne Burrows testified that he was employed by the Alabama Department of Toxicology and Criminal Investigation and had been so employed for one year and nine months. He had a BS degree in chemistry and was classified as a criminalist in the identification of drugs. He testified that officer Hayes personally delivered to him an envelope containing two aluminum foil packages; that he opened both packages and observed a brown and white speckled powder in each package; that he ran a preliminary spot test on the substance using sulfuric acid and formaldehyde and he got a purple color. He determined the substance to be heroin after making this preliminary test. He resealed the envelope and placed it in a locked cabinet until January 9, 1974. He had the only key to this cabinet.

He further testified that on Jaunary 9, 1974, he performed a full examination on the powder. He ran an ultraviolet spectroscopy test. He ran two thin layer chromotography tests and he ran one gas chromotography test. Without going into details involving every test that was conducted by this witness, it was his testimony that every test proved the powder to be heroin.

Trial counsel raised the question as to this witness being qualified to render an expert opinion but the trial court ruled that he was fully qualified as an expert in drug identification.

This witness was subjected to a rigid cross-examination by trial counsel which demonstrated that he possessed a remarkable degree of knowledge about the subject of drug identification. He was most resourceful and displayed a marked degree of ingenuity in the trial of this case. In sum, appellant could not have been better represented.

When the state rested, appellant moved to exclude the state's evidence on the ground that the chain of evidence had been broken. This motion was overruled.

Appellant was the only witness to testify in his behalf. He admitted that he had seen Mr. Softley on two occasions but had never been introduced to him. He admitted that he had been in the Crescendo Lounge. He admitted that he had two conversations with Softley. He said in the first conversation Softley asked him if he knew where he could buy some heroin and he told him, "No, man. I don't fool with it." He testified that on the second occasion Softley said to him, "Hey, man, I know you fool with the stuff. Come on, man, you know where I can get some." Appellant replied, "Naw, man, I told you I don't fool with it. Will you leave me alone?".

Appellant denied that he sold any heroin to Softley and denied that he went to 3301 Norwood Boulevard with Softley and didn't know where this place was located.

On cross-examination appellant admitted that he had previously been convicted of burglary and burglary and grand larceny.

■ To authorize a witness to testify as an expert it must appear that by study, practice, experience, or observation as to the particular subject, he had acquired a knowledge beyond that of ordinary witnesses. Thomas v. State, 249 Ala. 358, 31 So.2d 71; Phillips v. State, 248 Ala. 510, 28 So.2d 542.

■ It is also well settled law that whether a witness is shown to possess the requisite qualifications is a preliminary question largely within the discretion of the trial judge. Phillips v. State, supra; King v. State, 266 Ala. 232, 95 So.2d 816; Carmichael v. State, 48 Ala.App. 748, 267 So.2d 538.

■ We hold the trial court did not abuse his discretion in allowing the expert testimony in this case.

■ We have related the chain of possession of the white powder substance from the time it was purchased from appellant by Softley, who delivered it to Sergeant George Hayes who, in turn, personally delivered it to the Department of Toxicology in Birmingham. We find no missing link in the chain of possession. We hold the identification and continuity of possession were sufficiently established to afford ample assurance of the authenticity of the drug and the analysis made by the expert witness. Powell v. State, 47 Ala. App. 582, 258 So.2d 923; Green v. State, 42 Ala.App. 439, 167 So.2d 694; Lackey v. State, 41 Ala.App. 46, 123 So.2d 186; Dennison v. State, 259 Ala. 424, 66 So.2d 552; Cartlidge v. State, 52 Ala.App. 495, 294 So.2d 462.

■ Cross-examination, thorough and searching, belongs to every party, but the scope and extent of cross-examination rests in the sound discretion of the trial court, and such discretion of the trial court will not be disturbed on appeal unless shown to be grossly abused. Diamond v. State, 49 Ala.App. 68, 268 So.2d 850; Byrd v. State, 51 Ala.App. 234, 283 So.2d 683; Hamlett v. State, 19 Ala.App. 218, 96 So. 371.

A careful review of this entire record shows that the trial court gave appellant's counsel wide latitude in cross-examining the witnesses for the prosecution. In fact the trial court could well have limited the cross-examination in many instances without offending any of the rules pertaining thereto. Out of 148 pages of the testimony in chief, appellant's counsel consumed 88 pages on cross-examination.

■ The refused charges, stating correct principles of law, were substantially, fully and fairly covered in the court's oral charge, and there was no error in their refusal. Cartlidge v. State, supra.

As mandated by Title 15, Section 389, Code of Alabama 1940, we have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.

Affirmed.

All the Judges concur.