HARRIS, Judge.
Appellant was convicted of possessing heroin and sentenced to ten years imprisonment in the penitentiary. At arraignment, in the presence of his retained counsel, he pleaded not guilty. After conviction he applied for probation and when probation was denied he gave notice of appeal. He was found not to be indigent. New retained counsel represents appellant on this appeal.
The evidence in this case is not in conflict. Appellant did not testify nor did he offer any evidence in his defense.
There are only two issues presented on this appeal (1) whether the chain of possession of the controlled substance was broken, and (2) whether appellant had possession, dominion or control of the contraband.
We will set forth the facts adduced by the State and then treat the issues presented.
The State’s first witness was Sergeant Paul A. Price, Jr., of the Birmingham Police Department. He testified that on October 1, 1976, he obtained from the magistrate a search warrant for the premises located at 1613-B 13th Avenue South, in Birmingham; *20 that after obtaining the warrant, he, Lieutenant Phillips, Lieutenant Bibb, Sergeant Sims, Sergeant Harris, and Sergeant Triplett of the Birmingham Police Department and Agent Kominitsky of the ABC Board executed the warrant; that, when they arrived at the specified apartment and knocked on the door and announced who they were, someone opened the front curtain and immediately closed it, whereupon they heard running and scurrying about inside; that Lieutenant Bibb then kicked the front door open, and they entered; that the first thing he saw when he got inside the apartment was a .45 automatic on the seat of a chair located inside the front door. He said that immediately after entering the apartment and seeing this .45, they noticed the appellant, Rogers, running up the hall from the bedroom toward the chair with the gun in it; that in addition to Mr. Rogers, they found three other persons in the apartment. He testified that these occupants were instructed to sit on a couch in the living room.
The search of the apartment was then initiated, and Sergeant Price testified that more than one item of alleged contraband was found in the apartment; that at 3:15 p. m. on the day of the search, one tin foil packet of white powder was taken from Debra Holt by Sergeant Sims. He said this tin foil packet was placed in an envelope and kept in Price’s possession until he returned the evidence to the magistrate, at which time it was sealed and taken at a later date to the State Toxicologist; that it was in the same condition when it was taken to the State Toxicologist as it was when he received it; that a tin foil packet of white powder and a clear plastic bottle containing a material resembling hashish were found on the end table in the left bedroom at 3:17 p. m.; that another tin foil packet containing white powder was found on the opposite end table at 3:17 p. m. also. He said the packet found on the left end table was placed in an evidence envelope, carried to the magistrate, sealed, and later turned over to the State Toxicologist; that said envelope was initialed “P.A.P.”; that such envelope was in his possession until it was shown to the magistrate and that af-terwards, it was placed in the Narcotics safe, to which he had the only key. He later took said envelope from the Narcotics and transported it to the State Toxicologist. He testified that at the State Toxicologist’s Office, he surrendered the envelopes to Criminalist Wayne Burrow; that from the time he found the tin foil packet, until the time he gave it to Wayne Burrow, it had been in his care, custody, and control the entire time and that it was in the same condition as it was when he found it. He said that the same procedure was followed regarding the envelope which was containing the tin foil packet found on the opposite end table.
Sergeant Price further testified that some blue tablets in a box were found on the chest of drawers in the bedroom at 3:20 p. m.; that exactly the same procedure regarding custody of the alleged contraband was followed with regards to the blue tablets.
He further testified that Sergeant Sims at 3:25 p. m., found another tin foil packet of white powder in the kitchen; that Sergeant Sims gave him that packet, and he placed it in an envelope and followed the same procedure as he did with the other articles.
On cross-examination, Sergeant Price stated that each item found that day was placed in a separate envelope. He also said that the Narcotics Detail’s general procedure is to put all evidence found in the same general area in the same envelope, except that no two quantities of loose powders that could be mixed together would be put in the same envelope. For this reason, he had placed the tin foil packet and the clear, plastic bottle found on the left bedside table in the same envelope; that all of the envelopes were initialed by him and that he was the officer who turned the narcotics in to the State Toxicologist.
Sergeant Price then proceeded to identify State’s Exhibits 2-11 which were various items found in the top drawer of a chest of drawers in the left rear bedroom of the *21 apartment. State’s Exhibit 3 was a checkbook from Central Bank with the name J. Rogers and Catherine Dixon Rogers, 1613 13th Avenue South. State’s Exhibit 2 was a receipt for a temporary driver’s license registered in the name James Howard Rogers, Jr., 1613-B 13th Avenue South. State’s Exhibit 4 was a piece of mail from Jefferson Clinic addressed to James Rogers, 1613-B 13th Avenue South. State’s Exhibit 5 was a bill from C.I.T. Finance Company to J. H. Rogers, 1613-B 13th Avenue South. State’s Exhibit 6 was a piece of mail from Birmingham Trust National Bank addressed to Jane Rogers, 1613-B 13th Avenue South. State’s Exhibit 7 was a checkbook from Central Bank in the name of J. Rogers or Catherine Dixon Rogers, and State’s Exhibit 8 was a bill of sale to Mr. James Rogers for a motorcycle. State’s Exhibit 10 was a tag receipt addressed to James Rogers, 1613-B 13th Avenue South. State’s Exhibit 11 was a piece of mail from Central Bank to James or Jane Rogers, and Exhibit 9 was a Veterans Administration patient card in the name of James H. Rogers, 1613-B 13th Avenue South. Price testified that he took this evidence and placed it in an envelope and that this evidence had been in his possession from the time these items were taken until he came to the courtroom today.
Officer James Sims of the Birmingham Police Department was the next witness for the State. He stated that he participated in the search of the apartment located at 1613-B 13th Avenue South; that he entered through the rear door; when he entered the rear door, a girl ran in front of him, sat down on the floor and stuffed a tin foil packet between her legs; that he turned this tin foil packet over to Sergeant Price and that it was in the same condition when he turned it over to Price as it was when he found it; that he also found the tin foil packet in the kitchen area, turned it over to Sergeant Price and that it was in the same condition when he turned it over as it was when he found it in the cabinet.
Officer James E. Bibb of the Birmingham Police Department was the next State’s witness. He testified that he, too, participated in the search of 1613-B 13th Avenue South, on October 1, 1976; that he entered through the front door of said apartment; that upon entering the apartment, he saw a gun and assisted in apprehending the appellant as he came running towards the gun; that he found a small tin foil packet in the bedroom on the right end table; that he turned this packet over to Sergeant Price in the same condition as it was when he found it.
Craig Bailey, a Criminalist for the State Department of Toxicology and Criminal Investigation was called to the stand next. He testified that his main duty was to identify drugs that are supposed to be in violation of the Controlled Substances Act of Alabama. He testified that Exhibits 12-15, the envelopes, were submitted to him by Sergeant Price and that such envelopes were placed under lock and key until he analyzed the contents.
Sergeant Price was recalled and testified that State’s Exhibit 12, the envelope, contained suspected Valium, which was found in the box on the chest of drawers in the bedroom at 1613-B 13th Avenue South; that Exhibit 15 contained a foil packet and the pill bottle found on the left end table in the left bedroom at said address; that Exhibit 14, containing a tin foil packet, was found on the left end table in the left, rear bedroom; that Exhibit 13 contained a tin foil packet found in the kitchen cabinet at said address. Sergeant Price further testified that the tin foil packet found stuffed between the legs of the girl in the bedroom was not placed in any of the envelopes numbered Exhibits 12-15, and that such was submitted in a separate envelope.
Craig Bailey was recalled to the stand and testified that the foil packet found above the stove contained heroin; that before he analyzed the powder in the packet the powder weighed 5.718 grams and that after his analysis there were roughly 4 grams of powder remaining. Bailey further stated that State’s Exhibit No. 14, the envelope containing powder found in the left, rear bedroom on the left end table, *22 contained a foil packet which contained .07 grams of white powder, and that such powder was found to contain heroin; that 31.1% of this powder was heroin.
Bailey then stated that State’s Exhibit No. 15 contained a clear, plastic bottle containing some brownish-black, lumpy material and that this material was determined to be marijuana hashish; that also in the envelope numbered State’s Exhibit 15 was a folded foil packet containing .039 grams of white powder which was analyzed to be 25% heroin. Bailey then examined State’s Exhibit 12 and stated that inside this envelope were three yellow tablets, and they appeared to be Valium tablets. In discussing each of these exhibits, Bailey stated that they had been in his care, custody, and control from the date that he received them until he brought them to court the day of the trial.
Bailey then stated that the envelopes were submitted to Mr. Wayne Burrow of the State Department of Toxicology on October 6, and that Mr. Burrow, in turn, submitted the envelopes to him; that at the time he got the envelopes, they were sealed and bore the initials “P.A.P.” He then reiterated that, from the time he had received them until the time he examined them, the envelopes and the contents were in his possession.
We do not find a missing link in the identification and continuity of possession of the heroin found in appellant’s apartment pursuant to the search warrant. The State’s evidence shows that State’s Exhibit 13 contained a packet of heroin found above the sink in appellant’s kitchen. State’s Exhibit 14 contained a packet of heroin found in the bedroom of appellant’s apartment, and State’s Exhibit 15 contained a packet of heroin and a pill bottle containing a substance resembling hashish.
The foil packet found in Debbie Holt’s possession was put in a separate envelope and was not introduced into evidence at appellant’s trial. A separate charge was pending against her at the time appellant was tried.
State’s Exhibits 13, 14 and 15 each contained various quantities of heroin, being 5.718 grams, .07 grams, and .039 grams, respectively. Each of the State’s exhibits contained various percentages of actual heroin ranging from 1 percent to 25 percent to 31.1 percent. Sergeant Price took the evidence obtained during the search and put the evidence in separate envelopes. He kept these envelopes in his exclusive possession until he delivered them to the magistrate who issued the search warrant to show him the fruits of the search. After showing these items to the magistrate he sealed the envelopes and put his initials on each one. He then locked them in the narcotics locker to which he had the only key. A few days later Sergeant Price removed the envelopes from the locker and personally delivered them to Mr. Wayne Burrow at the State Department of Toxicology. At the time he delivered them to Mr. Burrow the envelopes were still sealed with Sergeant Price’s initials still on them. Mr. Burrow was a Criminalist in the employ of the Department of Toxicology.
Mr. Craig Bailey, the examining Crimi-nalist in the Department of Toxicology, stated that he received the envelopes from Mr. Burrow on October 6, 1976, and the seals had not been broken. Mr. Bailey broke the seals to analyze the contents and then re-sealed each envelope. Mr. Bailey kept the re-sealed envelopes in his exclusive possession until he brought them to appellant’s trial.
In Oury v. State, 53 Ala.App. 240, 298 So.2d 661, this Court held:
“The evidence as to the custody and possession of the envelope and its contents sufficiently established there was no missing link in the chain of identification. The identification and continuity of possession were sufficiently shown, affording ample assurance of the authenticity of ‘State’s Exhibit 1’, and the analysis conducted by the Toxicologist. Powell v. State, 47 Ala.App. 582, 258 So.2d 923; Green v. State, 42 Ala.App. 439, 167 So.2d 694; Lackey v. State, 41 Ala.App. 46, 123 So.2d 186; Dennison v. State, 259 Ala. 424, 66 So.2d 552.”
*23 Under the undisputed evidence in this case and the above cited authorities we hold there was no missing link in the chain of possession of the heroin seized by the officers in searching appellant’s apartment.
The indictment in this case charged that appellant possessed 0.282 grams of heroin. It is not contended, nor could it be successfully contended, that there was a fatal variance between the amount of heroin possessed by appellant and the amount charged in the indictment. In Owens v. State, 291 Ala. 107, 278 So.2d 693, the Supreme Court held that no fatal variance existed where an indictment alleged possession of 70.84 milligrams of heroin and the proof showed possession of only 49 milligrams.
It is sufficient to prove so much of an indictment as shows that the accused has committed a substantial offense specified therein. Fuller v. State, 39 Ala.App. 219, 96 So.2d 829.
We turn now to the issue of constructive possession. A warrant was obtained for the search of the apartment at 1613-B, 13th Avenue South in Birmingham. Upon arriving at this apartment, knocking on the door and announcing they were police officers and had a search warrant, the officers saw a young girl pull the curtain aside and look at them. At this time the officers heard scurrying and someone running around in the apartment. When it was clear and evident that no one would open the door one of the officers kicked the door open and made a forcible entry. As the officers entered the front door they saw appellant running from one of the bedrooms toward a .45 automatic pistol which was on a chair a few feet from the front door and between the officers and appellant. The officers caught and subdued appellant before he reached the pistol.
One of the other officers entered the apartment from the rear and was immediately confronted by a young girl running toward the rear door with a packet in her hand. When she saw the officer she sat down on the floor and put the packet between her legs. The officer took possession of the packet and carried the girl to the living room and put her on a couch where the other officers had placed appellant, his wife and another male. A subsequent search of the apartment revealed two packets of heroin in open view on the bedside tables in the left bedroom. A third packet of heroin was found in a cabinet above the kitchen sink. In addition to the narcotics found in this apartment the officers discovered several letters and other documents belonging to appellant and specifying his address as being that of the apartment then and there being searched. Included among these letters and documents were a checkbook from Central Bank in the name of appellant and his wife; a temporary driver’s license issued in the name of James Howard Rogers, Jr., with the address “1613 B 13th Ave. S.”; mail from the Jefferson Clinic; a bill from C.I.T. Finance Company; mail from Birmingham Trust National Bank; a tag receipt dated May 27, 1976, and a piece of mail from Central Bank. All of these items were addressed to appellant at 1613-B, 13th Avenue South. Moreover, clothing belonging to appellant was found in the closet during the search and removed by the officers. And, too, appellant was wearing blue jeans and was naked to his waist.
The above established strong circumstantial evidence that appellant occupied this apartment and had physical control over the narcotics, and the intent to exercise dominion, and the external manifestations of intent and control. Knowledge of the presence of the prohibited substance may be established by circumstantial evidence, and guilt does not depend on ownership. The offense of possession of illegal drugs is susceptible of joint commission. Daniels v. State, 49 Ala.App. 654, 275 So.2d 169; Fields v. State, Ala.Cr.App., 333 So.2d 861.
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. *24 Rider v. State, 56 Ala.App. 137, 319 So.2d 756; McCall v. State, 262 Ala. 414, 79 So.2d 51; Hines v. State, 260 Ala. 668, 72 So.2d 296; Benefield v. State, 286 Ala. 722, 246 So.2d 483.
The evidence was sufficient to sustain the verdict of the jury, and the judgment of the court. The case is affirmed.
AFFIRMED.
All the Judges concur.