298 So.2d 661

**Gordon OURY**

v.

**STATE.**

**8 Div. 402.**

Court of Criminal Appeals of Alabama.

July 30, 1974.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

Richard A. Kempaner, Huntsville, for appellant.

HARRIS, Judge.

Appellant was put to trial upon a two-count indictment charging (1) the *possession* of heroin and (2) the *sale* of heroin in violation of the Alabama Uniform Controlled Substances Act of 1971. At both arraignment and trial, he was represented by retained counsel, who represents him on this appeal. The jury returned a general verdict of guilty as charged and the court imposed a sentence of fifteen (15) years in the penitentiary.

On July 22, 1972, F. L. Strength, an Alabama State Trooper was sent from Montgomery to Huntsville to work as an undercover agent in ferreting out illegal drug traffic in that city. According to Mr.

Strength he was at the Huntsville Mall around two o'clock on the afternoon of July 22 and appellant approached him and asked if he knew anyone who "wanted to buy any smack", which is the term used in the trade of those who push the sale of heroin. Mr. Strength further testified:

"He asked me if I knew anyone that wanted to buy any heroin. I said, 'I might be interested in it.' I said, 'How much do you have, how much do you have in mind?'. He said, 'About five dime bags.' I said, 'Well I am more interested in a fifty cent piece', which is a $50.00 bag. You are supposed to get more heroin that way. He said he didn't know at the time, that he would have to check with his man or with his contact and that he would let me know later."

On this occasion, appellant mentioned the name of one Johnny Smith. It was agreed that appellant would get back in touch with Mr. Strength at 80 Whiteway Trailer Ranch and he came to this trailer about 6:15 that evening. When he arrived there was a confidential informer present with Mr. Strength. Appellant told Mr. Strength that his contact man was Johnny Smith but he had been unable to get in touch with him.

Mr. Strength, appellant and the informer rode around a section of Huntsville and appellant went in several places trying to locate Johnny Smith. They finally located him at an apartment building and appellant brought him to the car. Smith got in the car and asked what they wanted. Mr. Strength told him and gave him two twenty-dollar bills and he was told to drive to 149 Binfort Court. When they got to this address, Smith left the car and went inside. He returned in a few minutes and said Shorty was not at home. They went to several other addresses in search of Shorty. Finally, Smith told Mr. Strength to let him out of the car and to go to the Spur Station at the corner of Seminole and Clinton and to wait, saying, "I'll be there in a few minutes." When Smith returned he said Shorty was not in and they rode to several other places to no avail. They kept riding around and when they got in the vicinity of a glass company, Smith asked Mr. Strength to stop and he got out of the car and entered an apartment building nearby. He returned to the car and said, "Shorty is at home now", and he told appellant, "You know where to park." Appellant directed Mr. Strength where to go and park. When Smith returned to the car Mr. Strength asked him if he got the heroin and Smith said, "Yes, I got it." Mr. Strength drove Smith to his home and he kept wanting to know what he was going to get out of it. Mr. Strength got out of his car and called the confidential informer to get out of the car and they had a conversation.

After talking with the informer, Mr. Strength returned to the car and saw appellant bending or folding a piece of tinfoil and he said, "Give me the stuff." Appellant handed it to him and Mr. Strength said, "I want all of it," and appellant gave him two bags. Appellant cut one bag in half and gave it to Smith with Strength's consent. According to Strength he had purchased four bags but appellant only gave him three. Strength opened one or two and testified the contents were brownish-white looking powder.

Around one o'clock a.m. on July 23, 1972, Bob Eddy, a deputy sheriff of Madison County assigned to the narcotics division, met Mr. Strength at a local motel in Huntsville at which time Strength turned over to him the three tinfoil packets he had received from appellant a few hours before. Strength did not put his name or initials on the packets.

The following day Mr. Eddy carried the packets to his office where he unfolded them and looked at the substance and testified that it had the appearance of white milk or sugar. He further testified that 70% of the heroin the officers get in the Huntsville area is white and 30% is brown in color. He put the packets in a manila envelope, put appellant's name on it and

other identifying information, sealed it and wrote his name across the seal. He put the envelope in a cabinet in his office and locked it.

Mr. Eddy further testified that he kept the envelope locked in the cabinet until July 27, 1972, when he removed it from the cabinet and personally delivered it to Mr. Van Pruitt, State Toxicologist, at his office in Huntsville at 1:55 P.M. on that date. The envelope was still sealed in the manner he had originally sealed it and it had not been opened at the time he surrendered it to Mr. Pruitt.

Mr. John Kilbourn, Assistant State Toxicologist at Huntsville, testified that he opened the envelope and described the contents to his secretary for record purposes, and then resealed the envelope. On August 14, 1972, Mr. Kilbourn opened the envelope and conducted a laboratory analysis of the contents of the three packets that were delivered to the laboratory on July 27. After the state proved Mr. Kilbourn's qualifications, he testified that he conducted chemical tests and other type tests, totaling 18 tests in all, and found the contents of each packet contained heroin and procaine. He stated that the substance in each of the three aluminum foil pieces was a tan colored powder. He said that after he made the laboratory analysis he put the powder back in each packet and put the three packets in the same envelope and resealed it. He brought this envelope to court with him in the condition it was in after resealing it. Upon the request of the prosecutor, he opened the envelope in court and removed the three packets whereupon they were marked State's Exhibit 1 for identification. Mr. Eddy identified State's Exhibit 1 as the same envelope that he kept in his possession from July 23, 1972, until he delivered it to Mr. Van Pruitt at the toxicologist's laboratory on July 27. He testified the envelope was in the same condition it was in at the time of delivery with the exception that it had been opened. The envelope and its contents were admitted in evidence over the objections of appellant that there was a missing link in the chain of possession and there was no evidence to connect appellant with the sale or possession of the heroin.

Appellant was the only witness to testify in his behalf and his testimony was in sharp conflict with State Trooper Strength. He denied taking part in the sale of heroin to Strength and denied that he ever had his hands on the heroin. He denied that he approached Mr. Strength at the Huntsville Mall and asked him if he wanted to buy any heroin. According to his testimony, he was at the Mall looking for Johnny Smith to try and collect the money that Smith had borrowed from him. He claimed that he had loaned Smith $120.00 and that Smith told him that he was going to buy heroin with the money. He knew Smith was a heroin addict and a pusher, too. They had been in the service together and had become good friends. He testified that while he was at the Mall looking for Smith, Mr. Strength came up to him and asked him if he knew where he could "cop some smack." He said he told Strength that he knew a person that might be able to get some for him. He mentioned Johnny Smith's name and Mr. Strength asked him to call Smith. He told Strength that he did not have a dime to make the call and Strength gave him a dime. He made the call and got no answer. He got in Strength's car and they rode around town and stopped several places looking for Smith. Finally appellant found Smith and told him a man in the car wanted to buy some heroin. Smith came to the car and talked to Mr. Strength. Smith got in the car and directed Mr. Strength where to drive. At the first place they stopped, he saw Mr. Strength give some money to Smith. After going to several more places, Smith returned to the car and said he had the stuff and gave it to another man in the car. In sum, his testimony was that he did not participate in the sale, received no money from it and never at any time had his hands on the heroin.

Appellant strenuously insists that the proper predicate was not laid for the admission of the heroin in evidence due to a break in the chain of custody. We do not agree. It is true that the envelope was delivered to Mr. Van Pruitt, Toxicologist in charge of the Huntsville Office, and that Mr. Pruitt did not testify that he delivered it to Mr. Kilbourn who made the chemical analysis. But it is also true that Mr. Kilbourn took possession of the envelope that was delivered to Mr. Pruitt on July 27, 1972, while in the laboratory and he then and there opened the envelope and dictated its contents to his secretary and resealed the envelope and kept it in his possession until he made the analysis on August 14th. After the analysis was made, Mr. Kilbourn resealed the envelope and kept it in his possession until it was opened in court and marked "State's Exhibit 1". The evidence as to the custody and possession of the envelope and its contents sufficiently established there was no missing link in the chain of identification. The identification and continuity of possession were sufficiently shown, affording ample assurance of the authenticity of "State's Exhibit 1" and the analysis conducted by the toxicologist. Powell v. State, 47 Ala.App. 582, 258 So.2d 923; Green v. State, 42 Ala.App. 439, 167 So.2d 694; Lackey v. State, 41 Ala.App. 46, 123 So.2d 186; Dennison v. State, 259 Ala. 424, 66 So.2d 552.

This court is without warrant to disturb the verdict of the jury where the evidence is conflicting. Hines v. State, 260 Ala. 668, 72 So.2d 296; Haggler v. State, 49 Ala.App. 259, 270 So.2d 690; Felton v. State, 47 Ala.App. 182, 252 So.2d 108.

The refused charges, stating correct principles of law, were adequately covered in the court's oral charge or in the written charges given at the request of appellant.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.

Affirmed.

All the Judges concur.