First degree murder; sentence: life imprisonment.
The appellant was indicted, tried and convicted for the murder of Billy Ray Jones. The appellant pled self-defense. He now contends on appeal that the jury's verdict was against the great weight of the evidence.
In reaching its verdict, the jury could have reasonably found the following facts, which are set out in a light most favorable to the State, to be true. On the night of October 11, 1975, the appellant visited a night spot in Enterprise called the Club Casino. While there, he was accosted by the deceased who was the manager of the club. The deceased slapped the appellant, presumably because the appellant appeared to be sneaking liquor into the establishment, which in fact was not the case.
Upon being slapped, the appellant left the club and returned to his home. He had a shotgun in his car, but the only shells he had contained birdshot. His purpose in returning home was to obtain shells containing buckshot. After loading his gun with buckshot, he returned to the Club Casino in the early morning of October 12, 1975.
Upon his return, the appellant engaged in a conversation with the deceased in the parking lot of the club. The appellant then walked to his car and removed the shotgun. Appellant yelled to his brother, who was standing by the deceased, to move. Appellant then fatally shot the deceased.
The deceased was known to habitually carry a pistol, and he was carrying a pistol on this occasion. When confronted by the shotgun brandishing appellant, the deceased attempted to draw his pistol. From the physical evidence, it was probable that the deceased pulled his pistol and had it pointed in the appellant's direction when the appellant fired.
Although it is not an indispensably crucial point, the jury could have reasonably concluded that the deceased never fired his pistol. An expert witness, Dale Carter, testified that the deceased's pistol had been damaged and that the cylinder had been jammed shut. The damage was caused by projectiles which were consistent with those recovered from the body of the deceased. Carter testified that the pistol would not fire and that it was fully loaded when he received it. He also testified that in his opinion the pistol had not been opened nor reloaded because of the way in which it was jammed. It took Mr. Carter, working under ideal conditions, from twenty to thirty minutes to unjam the pistol in order to remove the bullets. *Page 98 
The appellant put on evidence which, if believed by the jury, controverted, denied and conflicted with the evidence as set out above.
 I
It is not our function to examine the record in order to satisfy ourselves that the appellant is guilty beyond a reasonable doubt. Our function, where sufficiency of the evidence is before us, is to examine the record and determine if the State put on sufficient evidence from which a jury might have found the accused guilty. We must allow all reasonable presumptions for the correctness of the verdict, bearing in mind that conflicting testimony presents a question for the jury. Only when the preponderance of the evidence against the verdict is so decided as to convince this Court that it was wrong and unjust will the verdict be overturned. Morton v.State, 58 Ala. App. ___, 338 So.2d 423 (1976).
The jury in this case had evidence before it from which it could reasonably conclude that the appellant did not act in self-defense. The jury would have been justified in believing that the appellant could have safely driven away from the scene instead of getting his gun and shooting the deceased. In addition, it is obvious that there was sufficient evidence from which the jury could conclude that the appellant was not free from fault in initiating the shootout.
 II
The appellant contends that the trial judge erred in admitting the deceased's pistol into evidence because there was an alleged break in the chain of evidence relating to the pistol. In order to admit the pistol or testimony relating to the pistol, it must be shown that the pistol was in substantially the same condition as at the time of the shooting. Dennison v. State, 259 Ala. 424, 66 So.2d 552 (1953).
There is only one point at which the appellant could reasonably argue that the chain of custody of the pistol was broken. When the police arrived at the scene, a large crowd had gathered. There was fear on the part of the police that the evidence might be disturbed. An Officer Braum was told to pick up the pistol and put it in the trunk of his car. He proceeded towards his car and returned in, at most, two minutes. The investigating officer, J.D. McDaniels, arrived during this period and accompanied Braum to Braum's car where Braum unlocked the trunk and handed McDaniel's a pistol. McDaniels received the pistol a maximum of five minutes after Braum removed it from the scene. As Braum was with his wife, who was hospitalized in Montgomery at the time of the trial, he did not testify.
The purpose in establishing a chain of custody is to show a reasonable probability that the pistol was not tampered with. 22A C.J.S. Criminal Law § 709. Such a reasonable probability was certainly established in the present case. It is obvious that the damage done to the pistol resulted from it being struck by shotgun pellets. There is not an iota of evidence that Braum damaged the pistol after picking it up. In order to support the appellant's contention, it should be shown that Braum had both a motive and opportunity to tamper with the pistol. Neither was shown. There is no evidence concerning a motive and all the evidence concerning opportunity is in the State's favor. Braum would have had two minutes in which to pry open the pistol, then load it, and then pry it shut again. The State's expert testified that in his opinion this could not be done and in fact, it took the expert at least twenty minutes to open the pistol.
The appellant sets great store in accounts by his witnesses that they saw the deceased fire. The trial judge, in his discretion, could have chosen to disbelieve the appellant's witnesses on this point. He also could have concluded that the witnesses saw a flash of light come from the deceased's pistol which might have appeared to the witnesses to be the result of the pistol being fired. The trial judge could have decided such a state of facts was consistent *Page 99 
with a flash which resulted from shotgun pellets striking the pistol, especially since the overwhelming evidence indicated the pistol had not been fired.
While the better practice would have been to have had Officer Braum testify, there was sufficient independent evidence to support the trial court's ruling. We thus hold that the trial judge did not abuse his discretion in admitting evidence concerning the pistol. From the evidence, it appears that there was a reasonable probability that the pistol was not tampered with.
 III
The State introduced the results of an atomic absorption test to show that the deceased had not fired a pistol on the morning in question. Concerning such a test, see Chatom v. State, 1 Div. 688 (Ms. August 31, 1976) Ala. App.
In the instant case, no error resulted from the admission of the results of the test for three reasons. First, the appellant's counsel effectively elicited from the State's expert that the results of the test did not prove that the deceased had not fired the pistol. Secondly, there was overwhelming independent evidence from which the jury could conclude that the deceased had not fired the pistol. Finally, the introduction of the results of the test was not objected to at trial nor on appeal.
AFFIRMED.
All the Judges concur.