PER CURIAM.
The indictment in this case charged the appellant with the offense of murder in the second degree. The jury returned a verdict of guilty of manslaughter in the second degree and fixed his punishment at twelve months imprisonment in the county jail. The court entered judgment in accordance with the verdict.
The case arose out of an automobile collision on a public highway and three persons died as a result thereof. The appellant was the driver of one of the cars, and the deceased persons were riding in the other car. The appellant admitted in open court during the trial of the case that the three persons named in the indictment as having been killed died as a result of the injuries received in the automobile accident.
The appellant in his brief filed in this appeal makes only one claim of error in the trial of the case. It is contended by the appellant that the chain of custody of the blood taken from the appellant a short time after the collision was not sufficiently established to allow the introduction into evidence the results of alcohol content test made by the toxicologist.
In connection with that contention, the witnesses testified in substance as follows:
Wilton Cox testified he arrived at the scene of the collision within minutes after 12:30 a. m.; that no one else was there other than the people in the cars; that he drove about one-half mile to a telephone and called the Andalusia Police Department; that he went back to the scene of the accident; that the people were then out of the cars; that on one else was there; that the defendant was present; that Officer Robert Harrell came to the scene about 1:00 a. m., and that the appellant left in the police car.
W. R. Harrell, a State Trooper, testified he received a call about the collision at 1:00 a. m. and proceeded to the scene, that he got there about 1:05 a. m.; that he placed the appellant under arrest; that he smelled intoxicating beverages on him and turned him over to Policemen Knox and Williamson of the Andalusia Police Department; that later that night he saw Deputy Don Harrell in front of the jail and that Don Harrell gave him some blood samples.
Policeman Jerry Dean Williamson testified he and Sergeant Knox went to the scene, and State Trooper W. R. Harrell turned the appellant over to them; that he smelled alcohol on the appellant, carried him to jail, and left him in the front office with a person in the jail.
Deputy Don Harrell testified that he saw appellant about 1:30 a. m. in the county jail and carried him to Columbia General Hospital; that he smelled alcohol on him; and that Dr. Moore treated him. He testified that he saw Dr. Moore take a blood sample from the appellant; that he gave it to him and he kept it in his possession, then turned it over to Trooper Robert Harrell, his brother.
Trooper Robert Harrell testified that he met his brother, Deputy Don Harrell, near the courthouse before daylight; that he gave him the blood sample, identified as being taken from the appellant; that the sample was in two tubes; that he did not remember how the sample was marked, or if it was marked; and that Deputy Don Harrell that afternoon gave the sample to Trooper Whitworth, who kept it in his possession until he delivered it to the toxicologist.
Dr. Morgan Moore testified that he treated appellant shortly after 1:50 a. m., October 18,1975; that he took a blood sample in a little test tube type thing with a rubber stopper, that there were two of them; and that he believed he used a piece of tape and *180 wrote appellant’s name on it to mark the sample.
Trooper R. W. Whitworth testified that on October 18, 1975, in the afternoon, he received from Trooper W. R. Harrell two vials of blood; that he carried them to his home and put them in his refrigerator because the crime lab was closed; that he took them out the next Tuesday afternoon about 3:00 o’clock; that they were in the same condition when he took them out of the refrigerator as they were when he put them in it; and that he delivered them to Richard Dale Carter at the crime lab in Enterprise.
Richard Dale Carter testified that he was a criminalist employed by the Alabama Department of Toxicology in Criminal Investigation. After being qualified as an expert in testing blood to determine alcoholic content, he further testified that on October 21, 1975, he received from Trooper R. W. Whitworth two standard vacutainers of blood, and that if he remembered right, they were wrapped in the standard hospital form; that the form had Pete Dewrell’s name on it, and that he did not remember if the tubes did or did not; that he ran a test on the blood and found that the blood samples contained .24 per cent ethyl alcohol. This witness identified a form that he said was around the tubes containing the blood and held there with a rubber band. The form was admitted in evidence. That exhibit shows the blood was drawn in the presence of Deputy Don Harrell at 3:10 a. m. to be tested for blood alcohol. Pete Dewrell’s name was on it and it listed “Physician Moore,’’ and was dated “10-18-75.”
In Oury v. State, 53 Ala.App. 240, 298 So.2d 661, State Trooper Strength received from Oury three bags of heroin. Strength opened one or two of the bags and testified the contents were brownish-white looking powder. The next day Strength turned the heroin over to Bob Eddy, a deputy sheriff. Strength did not put his name or initials on the packets. Eddy carried the packets to his office and there looked at the contents and testified it had the appearance of white milk or sugar. He put the packets in a manila envelope, put Oury’s name on it with other identifying information, sealed it, and wrote his name across the seal. He put the envelope in a cabinet in his office and locked it; then he removed the envelope from the cabinet four days later and delivered it to Van Pruitt, State Toxicologist, at his office in Huntsville.
John Kilbourn, Assistance State Toxicologist at Huntsville, testified he opened the envelope, described the contents to his secretary, and resealed the envelope. Some days later, Kilbourn opened the envelope, analyzed the contents, and found it to contain heroin. We here quote from the opinion in that case, Oury v. State, supra:
“Appellant strenuously insists that the proper predicate was not laid for the admission of the heroin in evidence due to a break in the chain of custody. We do not agree. It is true that the envelope was delivered to Mr. Van Pruitt, Toxicologist in charge of the Huntsville Office, and that Mr. Pruitt did not testify that he delivered it to Mr. Kilbourn who made the chemical analysis. But it is also true that Mr. Kilbourn took possession of the envelope that was delivered to Mr.. Pruitt on July 27, 1972, while in the laboratory and he then and there opened the envelope and dictated its contents to his secretary and resealed the envelope and kept it in his possession until he made the analysis on August 14th. After the analysis was made, Mr. Kilbourn resealed the envelope and kept it in his possession until it was opened in court and marked ‘State’s Exhibit 1.’ The evidence as to the custody and possession of the envelope and its contents sufficiently established there was no missing link in the chain of identification. The identification and continuity of possession were sufficiently shown, affording ample assurance of the authenticity of ‘State’s Exhibit 1’ and the analysis conducted by the toxicologist. Powell v. State, 47 Ala. App. 582, 258 So.2d 923; Green v. State, 42 Ala.App. 439, 167 So.2d 694; Lackey v. State, 41 Ala.App. 46, 123 So.2d 186; Dennison v. State, 259 Ala. 424, 66 So.2d 552.”
*181 We find no missing link in the chain of identification in the case before us. The identification and continuity of possession of the blood taken by Dr. Moore from appellant was clearly and sufficiently shown to allow the testimony of Richard Dale Carter, Criminalist, as to the alcohol content in said blood. The ruling of the trial court in that respect is without error.
We have searched the record for error and have discharged our statutory duty in that respect and have found no error injuriously affecting the substantial rights of appellant.
The foregoing opinion was prepared by the Honorable L. S. Moore, Supernumerary Circuit Judge, serving as a Judge of this Court under Section 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.
We affirm the judgment addendum.
AFFIRMED.
All the Judges concur.