Appellant Clarence Edward Shute, Jr. was convicted of possession of pentazocine hydrochloride (Talwin) in violation of the Alabama Controlled Substances Act. Because of the applicability of the Habitual Felony Offenders Act, he was sentenced to 99 years in the penitentiary. There are three issues raised by him on appeal.
 I
Appellant contends that the trial court erred in denying his motion to suppress evidence of the controlled substances found in the glove compartment of his car, arguing that these substances constituted the fruits of an illegal search and seizure. A statement of the facts is necessary.
On the morning of February 17, 1983, Narcotics Officer Pears of the Mobile Police Department received a call from a confidential informant whom he had known for about a year. Pears testified that his informant had given him information in the past which had always proven reliable and which had led to five or six convictions of narcotics offenders. The informant told Pears "that there was a black male by the name of Clarence Shute at the corner of Ann and Arlington Streets in a maroon Chevette automobile and was selling talwin . . ." and gave him the tag number of the car. He said that Shute was selling "sets" of drugs. Pears and his partner proceeded to this intersection and began observing Shute, but Shute left and they lost him while pursuing. They then made a call on their radio and informed the dispatcher of the tip and of their actions. The dispatcher put this information out on the general police channel, asking officers to be on the lookout for the appellant's car. Officer Vincent Resso received this information about 10:00 a.m. Close to 1:00 that afternoon, Resso and his partner observed a maroon Chevette-type automobile and proceeded to verify with the dispatcher that the tag number was identical with that given out earlier. Resso then made the stop of the appellant's vehicle. The driver of the car, the appellant Clarence Shute, appeared nervous and began to perspire. The officer, fearing that he might draw a weapon, gave him a pat-down search and placed him in the back of the police vehicle. He then looked inside the car to see if he could see a weapon or narcotics. The glove compartment was not unlatched, but the door hung loose sufficiently for the officer to see inside. Resso testified that the glove compartment looked as if it had been pried open in the past, so that it did not close properly. He observed three brown manila envelopes, approximately three inches by two inches in size. He recognized these envelopes as those employed in the underground economy in the illicit drug traffic. He testified that he had seen many of them and they were used to package marijuana. He testified that with his fingertip he was able to slide one of the envelopes out of the glove compartment. He looked in it and found that it contained a green vegetable substance, which later turned out to be marijuana. He then forced the glove box open and retrieved the other two envelopes. They contained blue antihistamine tablets known as "blues", and 28 Talwin tablets known as "T's", being Pentazocine, a controlled substance. The officer testified that the telltale envelopes were visible through the window of the passenger side of the car, in plain view. The officer recognized the objects observed to be evidence of wrongdoing. Although the evidence was disputed, the court had ample grounds for finding the envelopes were in plain view and that they were not the fruits of a search, as these terms are employed in Coolidge v. New Hampshire, 403 U.S. 443,91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
Did Officer Resso have probable cause to stop the Shute vehicle? From his testimony, it is clear that he did not have sufficient independent knowledge to constitute probable cause based on the facts known to him at that time. However, we *Page 673 
have held in a number of cases that it is not fatal to the stop that the stopping or arresting officer did not personally have independent knowledge which would have amounted to probable cause. This fact does not necessarily invalidate an arrest. The knowledge of all the officers involved in a police situation may be evaluated collectively in assessing whether that knowledge constituted probable cause as is constitutionally required. Robinson v. State, 361 So.2d 379 (Ala.Crim.App.), cert. denied, 361 So.2d 383 (Ala. 1978), and cases cited therein. Not every radio dispatch supplies probable cause for a police officer to make an arrest, but the information communicated may supply that probable cause when coupled with the detail of the information given, the credibility of the source, and other pertinent circumstances. Rudolph v. State,371 So.2d 962 (Ala.Crim.App.), cert. denied, 371 So.2d 965
(Ala. 1979); Hancock v. State, 368 So.2d 581 (Ala.Crim.App.), cert. denied, 368 So.2d 587 (Ala. 1979). The knowledge of one officer is imputed to another officer in the situation of a radio call directing a stop or arrest, in assessing whether or not probable cause existed. Parker v. State, 397 So.2d 199
(Ala.Crim.App.), cert. denied, 397 So.2d 203 (Ala. 1981);Robinson, supra; Cook v. State, 56 Ala. App. 250, 254,320 So.2d 764 (1975).
The officer receiving the tip knew that the informant had never given him bad information, that his information had led to five or six convictions in the past, and he had found the appellant to be at the intersection named, in the type car described, and with the identical tag number. While he did not know precisely how his informant had gained this information, the stopping officer had further corroboration. The officer who stopped the car observed a black male, in a Chevette-type car, with the identical tag number, and in the vicinity of the Ann and Arlington intersection. This collection of corroborative detail would suffice, even under the stiffer two-prong test of the Aguilar[1] and Spinelli[2] rule. We are readily satisfied that they satisfied the "totality of the circumstances" test as pronounced in Illinois v. Gates, 462 U.S. 213, 76 L.Ed.2d 527,103 S.Ct. 2317 (1983). Accordingly, the trial court correctly denied the motion to suppress premised on illegal search and seizure.
 II
Appellant next contends that the court erred in admitting testimony that the substance found in one of the envelopes was "Talwin" (Pentazocine). He argues that Ms. Sylvia Bryant was not proved to be expert in analyzing chemical substances, and that, accordingly, her opinion testimony should not have been admitted. As Bryant began testifying, counsel for appellant first stipulated to her qualifications, but then withdrew his stipulation. Bryant then testified regarding the evidence she received, the tests she performed on it, and the results of those tests. The appellant did not object to this testimony being received into evidence. We therefore find that there was no objection and adverse ruling preserving the question for appellate review. Streeter v. State, 406 So.2d 1024
(Ala.Crim.App. 1981), cert. denied, 406 So.2d 1029 (Ala. 1981), cert. denied, 456 U.S. 932, 102 S.Ct. 1984, 72 L.Ed.2d 450
(U.S. 1982).
 III
Appellant next asserts that the chain of custody of the envelopes was insufficiently proven, so that it was not shown that the envelope containing the 28 Talwin tablets was the same envelope as that retrieved from appellant's car.
The evidence was that Officer Resso got the envelopes from the car and turned them over to his partner, Officer Monigan. Monigan testified that he gave the envelopes directly to the criminalist, Sylvia Bryant, at the Mobile police lab on the same day. She testified that she did not know who gave the envelopes to her but that she received them the following *Page 674 
morning. This is the weak or missing link in the chain of custody complained of by the appellant. It is not necessary that a perfect strong and unbroken chain of possession be proved to an absolute certainty. White v. State, 384 So.2d 1161
(Ala.Crim.App.), cert. denied, 384 So.2d 1164 (Ala. 1980). Evidence has been held correctly admitted even when the chain of custody has a weak or missing link. Oury v. State,53 Ala. App. 240, 298 So.2d 661 (1974). There is no suggestion that the evidence was tampered with in any way. The state does not have to negate the remotest possibility of alteration, substitution, or tampering with the evidence. Whetstone v.State, 407 So.2d 854 (Ala.Crim.App. 1981); Tate v. State,435 So.2d 190 (Ala.Crim.App. 1983); Banks v. State, 448 So.2d 973
(Ala.Crim.App. 1984). The court did not err in receiving the Pentazocine into evidence.
 IV
Appellant also contends that the court should have granted him a directed verdict of acquittal because, he says, the state did not prove actual knowledge by him that the drugs were in the vehicle. The testimony was that the vehicle belonged to his niece. Appellant stated, however, that he had been in possession of the vehicle and had been making payments on it for a year and a half or two years. For all practical purposes, the car did belong to him; he certainly had exclusive possession plus an economic interest in it. Several pieces of evidence further indicate knowledge on the part of the appellant that there were prohibited substances in the glove compartment of the car. Officer Resso testified that when he undertook to stop the appellant, the appellant first speeded up but then stopped his car. He testified that appellant became very nervous and beads of perspiration broke out on his forehead while he questioned him. He further testified that the appellant insisted the car belonged to his girlfriend and not to him. Finally, the appellant refused to voluntarily open the glove compartment. This conduct is all evidence of guilty knowledge on the part of the appellant. See Jones v. State,432 So.2d 5 (Ala.Crim.App. 1983); Reed v. State, 368 So.2d 326
(Ala.Crim.App. 1979). The motion for a judgment of acquittal was not well taken.
This case is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Aguilar v. Texas, 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509
(1964).
[2] Spinelli v. United States, 393 U.S. 410, 21 L.Ed.2d 637,89 S.Ct. 584 (1969).