Appellant, Allen Buford Moore, was indicted for the murder of John Aaron by shooting him with a gun in violation of §13A-6-2, Code of Alabama 1975. On May 9, 1984, a jury found appellant guilty as charged in the indictment. The court sentenced appellant to life imprisonment.
On January 20, 1984, J.F. Aaron discovered the body of his father, John Aaron, lying on the floor of the victim's mobile home at the Ponderosa Trailer Park in Franklin County. It was subsequently determined that death was caused by a bullet wound to the brain.
Ernest Eugene Jackson resided in the Ponderosa Trailer Park. Jackson met appellant, who was also a resident of the trailer park, for the first time on January 19, 1984. Appellant came to Jackson's trailer around 7:00-8:00 p.m., looking for someone who no longer lived there. Appellant had consumed "some whiskey" before going to Jackson's trailer; and Jackson had been drinking that afternoon with his brother-in-law, Bill Landrum.
When Jackson informed appellant that the person in question no longer resided there, Jackson invited appellant in. Appellant, Jackson, and Landrum continued to drink from a "fifth" of whiskey. Jackson and Landrum wanted to meet some women, so appellant suggested they drive to "Spruce Pine," where he knew some women. Landrum drove the trio to the home of a woman related to appellant. The woman's two daughters, ages thirteen and fifteen, were present. This group consumed the remainder of the "fifth" of whiskey, and then proceeded to the "package" store at Littleville, where they purchased more whiskey. Appellant claims that he does not remember anything after visiting the "package" store in Littleville.
According to Landrum and Jackson, the trio returned to the Ponderosa Trailer Park around midnight. Jackson was unable to get into his trailer, so he spent the night at Landrum's. Landrum and Jackson testified that they left appellant at the trailer park. The next day, J.F. Aaron came to Jackson, seeking help for his father. Jackson told Aaron where to find a telephone and Jackson went to the victim's trailer.
Landrum testified that he owned a .22 caliber pistol, which had a taped handle and was not in very good condition. Landrum had placed the pistol in a paper bag with a pair of gloves and a flashlight and put the bag, with its contents, in the back seat of his car on January 19, 1984. The gun was missing on January 20, 1984. Landrum stated that the only persons who had been in his car were he, Jackson, and appellant; however, on cross-examination, it was established that two young boys had also been in the car.
Belinda Kaye Abbott was living with appellant at the Ponderosa Trailer Park during January of 1984. Appellant was married to another woman, but was separated from her during this time. Abbott stated that appellant left their trailer about 5:30 p.m. on January 19, 1984. She next saw appellant around 10:30 p.m. and he was "very drunk." Appellant told Abbott that he "either had to kill someone, or the Mafia was going to kill him." Appellant picked up his coat and a pistol with a taped handle fell out. Abbott picked up the gun and put it away. Abbott testified that around 11:15-11:30 p.m. appellant took the pistol and left the trailer. Appellant returned about forty-five minutes later and told Abbott that he had killed someone. Abbott checked the pistol and noticed that one chamber was empty. When she had checked previously, the chamber contained a round of ammunition. *Page 29 
Abbott told appellant that he should get rid of all the evidence, which consisted of the gun, a carton of L M cigarettes (the brand smoked by the victim), and some pill bottles. According to Abbott, one pill bottle had the victim's name on it. Appellant took the evidence to the "Pump Pond Spillway," located near the trailer park, for disposal. Some time later, Abbott voluntarily went to police authorities with this information.
On cross-examination, Abbott stated that appellant was "really drunk" that night, and that she thought he was "fooling" around at first. She testified that appellant told her that he stole the gun from Landrum's car and that he described how he killed the victim. Abbott further testified that appellant said that he grabbed Aaron around the neck, put the gun to his head, and pulled the trigger.
Officer Dale Nix, an investigator with the Franklin County Sheriff's Department, picked up appellant the morning of February 4, 1984, and took him to the sheriff's office for questioning. After proper Miranda warnings, appellant made a full and complete confession. His statement was essentially consistent with the testimony of Jackson, Landrum, and Abbott, and contained a detailed account of the facts which, at trial, he claimed he could not remember. Appellant had previously, when questioned by Nix on two occasions, denied any knowledge of the killing when questioned by Nix. Appellant stated in his confession that he tied "some" wires together in the victim's trailer, hoping to create an electrical short which would cause a fire. Nix went to the victim's trailer and found several "hot" wires tied together as described by appellant in his confession.
Appellant testified in his own defense and his testimony was substantially the same as that of Landrum and Jackson. Appellant stated that he had no memory of the events subsequent to stopping at the Littleville "package" store. Although appellant admitted that he signed the confession, he testified that he could not remember making parts of the statement. According to appellant, he was intoxicated when the statement was obtained by Nix. (The facts surrounding the taking of appellant's confession will be discussed in more detail in part I of this opinion.) According to appellant, everything he knew about the murder was told to him by others. He stated that most of what he knew was told to him by Abbott three days after the murder.
 I
Appellant first contends that the trial court erred in denying his motion to suppress the confession. It is argued that appellant was so highly intoxicated from consumption of drugs and alcohol that the confession must be deemed involuntary. We disagree.
The testimony presents conflicting evidence on this issue. There is evidence that on the evening prior to appellant's arrest and subsequent confession, he was given four Libratrol pills, two of which he immediately consumed; that he and several friends then consumed "a lot" of beer and whiskey and smoked several "joints" of marijuana; and that he later purchased more beer and liquor and a bottle of wine; and there is evidence that he "passed out" at approximately 2:30 a.m. the following morning. At approximately 8:00 a.m. when he was notified that Nix was coming to see him, appellant told a companion that he was still "light-headed" from drinking. However, this companion testified that appellant was not so drunk that he "didn't know where he was" and that he "walked pretty straight." The companion's wife testified that, although she could smell alcohol about appellant's person, he did not appear to be intoxicated. Appellant testified that he was "a little drunk" at 7:30 a.m., but that he was thinking clearly; that, on the way to the police station, he took the remaining two Libratrol pills and was "high" within a few minutes; that he remembered giving part of the confession and signing it of his "own free will"; that Nix read the statement to him before he *Page 30 
signed it; and that he gave the confession because he was on the brink of suicide and, by confessing to a murder, he would be letting the State kill him rather than do it himself.
Nix testified that he was within three to three and a half feet of appellant the morning of February 4 and did not smell alcohol about appellant's person. In Nix's opinion, appellant was not under the influence of alcohol or drugs, and was "very" alert. Investigator Carson testified that when he observed appellant that morning, appellant acted normal. Carson was close to appellant and did not smell alcohol and his speech was "all right." In Carson's opinion, appellant was not "under the influence" when he confessed to the murder.
Appellant stipulated at the suppression hearing that theMiranda rights were read to him and that his signature appears at the end of the confession. Nix stated that appellant said he understood each right as it was read to him and that no force or coercion was used to obtain the statement.
It is well settled that in order for intoxication to render a confession inadmissible, it must be shown that the mind of the defendant was substantially impaired when the confession was made. Moore v. State, 415 So.2d 1210, 1214 (Ala.Cr.App. 1982), cert. denied, No. 81-728 (Ala.), cert. denied, 459 U.S. 1041,103 S.Ct. 459, 74 L.Ed.2d 610 (1982), and cases cited therein. "Intoxication, short of mania or such impairment of the will and mind as to make an individual unconscious of the meaning of his words, will not render a statement or confession inadmissible." Tice v. State, 386 So.2d 1180, 1185
(Ala.Cr.App), cert. denied, 386 So.2d 1187 (Ala. 1980), and cases cited therein. See also Palmer v. State, 401 So.2d 266,268 (Ala.Cr.App.), cert. denied, 401 So.2d 270 (Ala. 1981), cert. denied, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463
(1982).
The voluntariness of an alleged confession is a question of law addressed to the trial court, whose ruling will not be disturbed on appeal unless it appears to be contrary to the great weight of the evidence or is manifestly wrong. Tice;Garrison v. State, 372 So.2d 55 (Ala.Cr.App. 1979).
 "The degree of intoxication which would affect the voluntariness of a statement is a question of fact initially addressed to the trial court and, depending upon its ruling, then to the jury for its consideration."
Tice, 386 So.2d at 1185. In the case at bar, there was conflicting evidence on the issue of intoxication. Appellant's own witnesses failed to substantially contradict the State's evidence that appellant was not so influenced by drugs or alcohol when he waived his rights and made the confession as to render his confession involuntary. The principal evidence relied upon by appellant to show that he was so intoxicated that he did not know what he was doing at the time of the taking of the confession, comes from the appellant himself. InMoore, 415 So.2d at 1214, 1215, this court stated:
 "Where the voluntariness inquiry presents conflicting evidence, great weight must be given the trial judge's finding of voluntariness. Even when there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. . . . `The trial court does not have to accept the testimony of [the] defendant as to the voluntariness of a confession if there is substantial testimony by others sufficient to constitute a predicate for the admission in evidence of the confession.' Bradley v. State, 337 So.2d 47, 50 (Ala.Cr.App. 1976)."
Although the evidence was conflicting, there was substantial credible evidence from which the trial judge could conclude that the confession was voluntary, and, since the decision of the trial judge was not contrary to the great weight of the evidence, it should not be disturbed on appeal. *Page 31 
We find no error in admitting appellant's confession.
 II
Appellant next contends that he was denied a fair and impartial jury because the trial judge refused to recuse himself after reviewing a psychiatric evaluation conducted on appellant, which had been requested by appellant. The evaluation stated:
 "It is also necessary for me to personally convey the fact that when I examined this individual he showed absolutely no remorse. For example, he stated that if he had committed the act, his personal feeling is that nothing should be done to him because the individual was an old man sitting around and no good to anybody. I would count that a sign that rehabilitation would not be a successful endeavor in this case."
It is argued that the judge's reading of this paragraph induced in the judge a prejudiced mental attitude or disposition toward appellant. There is absolutely no evidence to substantiate this claim.
There is a presumption that a judge or one sitting in a judicial capacity is qualified and unbiased, and one alleging the contrary has a substantial burden of proof. Irby v. State,429 So.2d 1179, 1182 (Ala.Cr.App. 1983); Marsh v. State,418 So.2d 191, 192 (Ala.Cr.App. 1982); Williams v. State,383 So.2d 547 (Ala.Cr.App.), aff'd, 383 So.2d 564 (Ala.), cert. denied,449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980); Schillaciv. State, 347 So.2d 556 (Ala.Cr.App.), cert. denied,347 So.2d 559 (Ala. 1977). "Prejudice on the part of a judge should not be presumed." Marsh, 418 So.2d at 192. "The appellant must present evidence to prove the personal bias of a judge, or else his motion cannot prevail." Slinker v. State, 344 So.2d 1264,1268 (Ala.Cr.App. 1977).
We have reviewed the record and find absolutely no support for appellant's contention that the trial judge acted in a biased manner toward appellant during the course of his trial and sentencing hearing. Appellant has failed to direct us to any support for his contentions and therefore has totally failed to meet the burden of proof required to substantiate his claimed error. We find no error in denying the motion to recuse.
 III
Appellant contends that the trial court committed reversible error in refusing to give appellant's requested charge on his theory of the case. The requested charge reads:
 "It is the Defendant, Allen Moore's theory of the case that he has no knowledge of killing John F. Aaron. The information he has given came from what others told him and if he did in fact shoot John F. Aaron, he was in such a diseased mental condition, that he is not and was not legally responsible for his actions. He further contends that the statement he gave to the police was a result of what others had told him and not his personal knowledge."
The requested charge was argumentative in nature and therefore properly refused. Johnson v. State, 459 So.2d 982
(Ala.Cr.App. 1984). See generally, Alabama Digest, Criminal Law
§ 807 (1). In United States v. Barham, 595 F.2d 231 (5th Cir. 1979), a similar, though more in-depth, charge was requested and denied. The court, agreeing with the trial judge, stated that "the requested instruction was more in the nature of a jury argument than a charge. It was for defense counsel to make, not the judge." In the case sub judice, the trial judge fully instructed the jury on the law of intoxication, which adequately and fairly presented appellant's "theory of the case." We find no error in the court's denial of appellant's requested charge.
 IV
Appellant contends that he was denied a fair trial because the State received one more strike than the defense. Appellant also argues that there would have been an equal number of strikes had the trial court *Page 32 
allowed the defense to challenge for cause a prospective juror related to State's witness Nix.
Prospective juror Pat Hutcheson stated that she was married to the uncle of Nix. Hutcheson stated that this relationship would not influence her in any way as a juror. The trial court refused the defense's request to challenge for cause.
In Nettles v. State, 435 So.2d 146 (Ala.Cr.App.), aff'd,435 So.2d 151 (Ala. 1983), the prospective juror was the third cousin of the arresting officer, who was also the State's primary witness. This court, in upholding the trial court's denial of the defense's challenge for cause, stated, "To justify a challenge of a juror for cause there must be a statutory ground (Ala. Code Section 12-16-150 (1975)), or some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court." Nettles, 435 So.2d at 149.
 "Ordinarily a juror is not disqualified where it appears that he is willing to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence not withstanding his scruples. The determination of this question is based on the juror's answers and demeanor and is within the sound discretion of the trial judge."
Barbee v. State, 395 So.2d 1128, at 1130-31 (Ala.Cr.App. 1981). "Where the statutory grounds for juror qualification are not involved, the trial judge is given much discretion in attempting to insure an unbiased jury." Nettles, 345 So.2d at 150 (relying on Barbee).
In the case at bar, there were no statutory grounds upon which a challenge for cause would lie. Hutcheson's testimony indicated that her relationship with Nix would not affect her responsibilities as a juror. Nothing in her testimony could be said to impart absolute bias or favor. The trial court acted within its discretion in denying the defense's motion to challenge Hutcheson for cause.
In Coon v. State, 431 So.2d 569 (Ala.Cr.App. 1982), this court held that it was not error for the State to receive one more strike than the defendant in a situation where there was an odd number of jurors available for the two parties to strike. "The mathematical result accords with the law and with the practice generally in criminal cases throughout the years."Coon, 431 So.2d at 573. Appellant's attempt to distinguish Coon
based on the failed attempt to challenge Hutcheson for cause, is without merit. We find no error in the trial court's overruling of appellant's objection to the number of strikes accorded the parties.
 V
During the trial of this cause, a .22 caliber bullet, removed from the brain of Aaron, was introduced into evidence. Appellant contends that the chain of custody was not properly established.
Dr. Henry Santina, a forensic pathologist, testified that he performed an autopsy on Aaron and removed a bullet from his brain. Santina initialed the bullet, placed it in a sealed envelope, and put the envelope in the evidence cabinet at the forensic medical facility in Tuscaloosa. Santina positively identified the bullet introduced at trial as being the one he removed from Aaron's brain.
Tim Williams, of the Franklin County Sheriff's Department, testified that he received the evidence envelope from Mike Lee. Lee was an employee of the forensic medical facility in Tuscaloosa, where Williams received the envelope. The envelope was sealed and Williams did not open it. Williams delivered the sealed envelope to Brent Wheeler, a criminalist with the Alabama Department of Forensic Sciences in Huntsville.
Wheeler testified that Williams delivered a sealed envelope containing a bullet which was allegedly removed from Aaron's brain. Wheeler tested the bullet and determined that it was a .22 caliber. The bullet was then locked up in the Huntsville lab, where *Page 33 
it remained under Wheeler's exclusive control until the time of trial.
Appellant contends that because Lee did not testify, the chain of custody was not properly established. A similar factual situation was presented in Jackson v. State, [Ms. 6 Div. 767, April 9, 1985] (Ala.Cr.App. 1985), where the individual who delivered the evidence to the criminalist for testing did not testify at trial. In Jackson we stated:
 "The purpose of establishing a chain of custody is to show a reasonable probability that there has been no tampering with the item of evidence. Bell v. State, 339 So.2d 96 (Ala.Cr.App. 1976). In passing upon the admissibility of such evidence, `the trial judge should consider the nature of the article and the circumstances surrounding its preservation and custody,' and permit its introduction where continuity of possession is `sufficiently established to afford ample assurances of . . . authenticity.' Washington v. State, 339 So.2d 611, 615
(Ala.Cr.App.), cert. denied, 339 So.2d 616 (Ala. 1976)."
In this case "an accounting was made of each successive step of the handling of the evidence." Lowery v. State,452 So.2d 897, 898 (Ala.Cr.App. 1984). While the better practice would have been to offer the testimony of Lee, there was clearly sufficient evidence to establish with reasonable probability that the bullet removed by Santina was the same bullet tested by Wheeler. See Oury v. State, 53 Ala. App. 240, 298 So.2d 661
(1974); Powell v. State, 47 Ala. App. 582, 258 So.2d 923 (1972). See also Coleman v. State, 411 So.2d 814 (Ala.Cr.App. 1981);Waters v. State, 360 So.2d 358 (Ala.Cr.App.), cert. denied,360 So.2d 367 (Ala. 1978); Thomas v. State, 356 So.2d 210
(Ala.Cr.App. 1977), writ quashed, 356 So.2d 214 (Ala. 1978). There is no contention that the bullet was "contaminated or altered in any way." Lowery, 452 So.2d at 899. Under these circumstances, we believe that the identification and continuity of possession were sufficiently established to afford ample assurances of authenticity so that the testimony of Wheeler was properly admitted.
For the foregoing reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.