The appellant was charged with the unlawful possession of cocaine. The jury returned a guilty verdict. The appellant was sentenced as a habitual felony offender to 12 years' imprisonment and was ordered to pay court costs and $50 to the crime victims' compensation fund.
On August 9, 1990, at approximately 10:00 p.m., Ozark Police Commander Butch Whittington received a call from a confidential informant. The informant stated that three black males in an older model Ford mustang automobile with a Florida license tag were attempting to sell cocaine in an area of Ozark, Alabama, that is known as the "Block." Officer Whittington testified that he relayed this information to Sheriff Deputy Butch Jones and to Sgt. Gary Brown. Officer Whittington testified that as he was driving towards "the Block," the informant again called him on his police cellular telephone. The informant said that the three males in the mustang had moved to Daris's, a local "shot-house" on Cora Avenue, where whiskey and beer are sold, and that he had witnessed them selling cocaine. The officers arrived at Daris's and waited until the vehicle moved so that they could verify the license tag number given by the informant. Deputy Jones and Sgt. Brown then stopped the mustang on Cora Avenue. Deputy Jones testified that as he and Brown approached the automobile, one of the passengers, later identified as Richard Dukes, jumped from the car and ran. Sgt. Brown *Page 428 
ran behind the passenger on foot until he noticed that Officer Whittington had started to chase him. Officers Brown and Whittington testified that as the passenger ran, he threw a medicine vial containing white pieces of rock-like substances and two small plastic bags containing the same material on the ground. All three officers testified that the appellant was driving the vehicle when it was stopped. The officers also testified that when the vehicle was stopped, there were four people in the car. All four individuals, including the appellant, were arrested for the unlawful possession of a controlled substance. Deputy Jones testified that he searched each of the four individuals, but that he did not find any drugs on their person. However, the officers did recover one small plastic bag containing a white powder from under the driver's seat. Also recovered was $221 from Richard Dukes.
David Thorne, the chemist who analyzed the evidence, testified that the substance in the medicine vial was cocaine. He also testified that two of the plastic bags contained cocaine and the third plastic bag contained starch. The bag containing starch was the plastic bag found under the driver's seat.
During his trial testimony and in his statement introduced at the trial, the appellant admitted that he was driving the mustang automobile and that he was aware at "the Block" and at Daris's that one of the passengers in the car had cocaine in his possession and was selling cocaine. The appellant was convicted of the unlawful possession of cocaine.
This appeal follows.
 I
The appellant, a black male, contends that the prosecution used peremptory strikes to eliminate black veniremembers from the jury, in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Here, we note that the record on appeal does not reflect the racial composition of the jury venire or the composition of the trial jury. The trial judge denied the appellant's Batson motion on the grounds that the prosecution's explanations were sufficiently race neutral. We agree.
Veniremember number 35 testified on voir dire that she had known the appellant for many years and that he had asked her for a date on a couple of occasions. An acquaintance with the defendant has been approved as a valid race-neutral reason.United States v. Alston, 895 F.2d 1362, 1367 (11th Cir. 1990);Ex parte Lynn, 543 So.2d 709, 711 (Ala. 1988).
Veniremember number 87's son was a defendant in a criminal case pending on the Dale Circuit Court's docket at the time of the present case. The prosecution or suspicion of involvement of criminal activity of a juror or a member of a juror's family has been accepted by this court as a valid race-neutral explanation for peremptory strikes. Henderson v. State,584 So.2d 841 (Ala.Cr.App. 1988); Lynn v. State, 543 So.2d 704, 709
(Ala.Cr.App. 1987), aff'd Ex parte Lynn, 543 So.2d 709 (Ala. 1988); cert. denied, 493 U.S. 945, 110 S.Ct. 351,107 L.Ed.2d 338 (1989);Powell v. State, 548 So.2d 590, 592-93 (Ala.Cr.App. 1988), aff'd Ex parte Powell, 548 So.2d 605 (Ala. 1989).
Veniremember number 124 had a criminal record, and his family had been frequently connected with criminal cases in the Dale Circuit Court. Previous prosecution has been held by this court to be a valid race-neutral explanation for peremptory strikes.Ward v. State, 539 So.2d 407, 408 (Ala.Cr.App. 1988); Avery v.State, 545 So.2d 123 (Ala.Cr.App. 1988).
Veniremember number 80 indicated that he was a minister at a church and would rather have been ministering to his congregation than serving on the jury. According to the prosecution he stated he did not want to sit in judgment of anyone else. Reluctance on the part of a juror to serve has been accepted as a valid race-neutral explanation. Woods v.State, 490 So.2d 24, 29 (Fla. 1986), cert. denied, Woods v.Florida, 479 U.S. 954, 107 S.Ct. 446, *Page 429 93 L.Ed.2d 394 (1986); United States v. Ruiz, 894 F.2d 501 (2nd Cir. 1990).
Veniremember number 65 testified that she had been in court before. She stated that she was in a bathroom with a woman who had given birth to a baby and that the baby was subsequently found in a dumpster. The State believed that she had been a witness for the state or the defense in that case. The circumstance of being in a bathroom with a woman who gave birth to a baby that was later found in a dumpster was highly suspicious. The prosecution believed that her presence there suggested that she had witnessed criminal conduct. Involvement in criminal conduct has been accepted by this court as valid race-neutral explanation for peremptory strikes. Henderson v.State, 584 So.2d 841 (Ala.Cr.App. 1988).
The trial judge was correct in finding the explanations given by the prosecutor to be sufficiently race neutral.
 II
The appellant next asserts that the chain of custody of the cocaine was not sufficiently proven. He contends that assurances were not given that the cocaine had not been tampered with. Specifically, he argues that there was a five-day interval between the time the substance was given to Mark Cruze, a chemist at the State forensics lab in Enterprise, Alabama, and the time it was given to David Thorne, the chemist who analyzed the evidence, which resulted in a break in the chain of custody because Mr. Cruze did not testify.
Officer Whittington testified that he placed the plastic bag containing a white powder that was found under the driver's seat and the plastic bags and medicine vial containing a rock-like substance dropped by Dukes in an evidence envelope, sealed it, and wrote his initials across the tape. He testified that he then placed the envelope in the Ozark drug vault, to which he had the only key at the time. Officer Whittington further testified that on August 15, 1990, he removed the envelope from the vault and gave it to Mark Cruze, an employee of the State forensics lab in Enterprise, Alabama. Officer Whittington returned on August 23, 1990, to retrieve the evidence from Thorne after the analysis was complete. Officer Whittington then placed the envelope back in the drug vault. Whittington testified that he did not see the evidence envelope again until the day of the trial when it was retrieved from the vault by the police drug custodian, Lt. Blocker. Officer Whittington testified that the envelope was in the same or substantially the same condition at the trial as when he retrieved it from the forensics lab.
Thorne testified that he received the evidence envelope on August 20, 1990, from Cruze. Thorne testified that after completing the analysis on August 20, 1990, he placed the evidence back in the original envelope, sealed it, signed it, and placed it in a secured locker. On August 23, 1990, he returned the evidence to Officer Whittington.
Each person who handled the cocaine and its container envelope testified at trial, except Cruze, who received the envelope from Officer Whittington at the lab and gave the envelope to Thorne for analysis. This court has applied the "reasonable probability" standard to chain of custody issues.Oury v. State, 53 Ala. App. 240, 298 So.2d 661 (1974). "The purpose in establishing a chain of custody is to show a reasonable probability that the evidence was not tampered with." Bell v. State, 339 So.2d 96, 98 (Ala.Cr.App. 1976).
In Shute v. State, 469 So.2d 670 (Ala.Cr.App. 1984), an officer testified that he delivered a substance to a Mobile lab. The criminologist testified that "she did not know who gave the envelope to her," but that she did remember receiving it the day after it was delivered by the officer. Shute,469 So.2d at 673. In this case Cruze gave the substance to Thorne for analysis. However, Cruze did not testify. This court, in upholding the chain of custody, in Shute, held:
 "It is not necessary that a perfect strong and unbroken chain of possession be proved to an absolute certainty. White v. State, 384 So.2d 1161
(Ala.Crim.App.), *Page 430 
cert. denied, 384 So.2d 1164 (Ala. 1980). Evidence has been held correctly admitted even when the chain of custody has a weak or missing link. Oury v. State, 53 Ala. App. 240, 298 So.2d 661
(1974). There is no suggestion that the evidence was tampered with in any way. The State does not have to negate the remotest possibility of alteration, substitution, or tampering with the evidence. Whetstone v. State, 407 So.2d 854
(Ala.Crim.App. 1981). Tate v. State, 435 So.2d 190
(Ala.Crim.App. 1983); Banks v. State, 448 So.2d 973 (Ala.Crim.App. 1984)."
Shute, 469 So.2d at 674.
In Ex parte Holton, 590 So.2d 918 (Ala. 1991), the appellant also argued that there was not a sufficient chain of custody. In that case, the director of the forensics lab in Enterprise, Joe Saloom, testified that he had received an item in an envelope from Officer Ray Owens and that when he received the envelope, it was sealed. However, Owens did not testify. The appellant argued that Owens's testimony was an essential link in the State's chain of custody and that, without that testimony, the cocaine was inadmissible. The Alabama Supreme Court in Ex parte Holton held that each link in the chain need not be proven by direct testimony but may be shown with circumstantial evidence. Using circumstantial evidence, as opposed to direct testimony of the "link," results in a "weak" link, and held further, that "[w]hen the link is 'weak,' a question of credibility and weight is presented, not one of admissibility." 590 So.2d at 920. In the case at bar, Officer Whittington testified that the evidence was sealed when he turned it over to Cruze. Thorne, who performed the analysis of the contents of the envelope, testified he had received the envelope from Cruze. The fact that Cruze did not testify "weakens" the chain and presents a question of weight, not one of admissibility. Ex parte Holton, 590 So.2d 918 (Ala. 1991).
In the case at bar, the testimony of David Thorne and Officer Whittington explain Cruze's handling of the evidence envelope. Mark Cruze was a chemist who handled this evidence when he received it in the forensics lab, and he kept the envelope until it was determined which chemist would conduct the analysis. Here, there is no suggestion that Cruze tampered with or substituted the evidence. Thus, we hold that as to the cocaine the State established a chain of custody sufficient to authenticate that item.
 III
The appellant contends that the trial court erred to reversal because, he says, the evidence was insufficient to sustain his conviction. Specifically, the appellant argues that there was no evidence to connect him with the controlled substance.
This court in German v. State, 429 So.2d 1138, 1141-42
(Ala.Cr.App. 1982) quoting United States v. Staten,581 F.2d 878, 883-884 (D.C. Cir. 1978), stated:
 " 'The possession vital to the convictions under review may, in familiar language, be either actual or constructive. It thus is unnecessary to show that the accused had the drug on this person or within his immediate reach; it is enough that he "was knowingly in a position or had the right to exercise dominion and control over" it, either directly or through others. Possession in that sense suffices though it is jointly shared, and it may be established by circumstantial as well as direct evidence.
" '. . . .
 " 'Several usable guidelines emerge from the decided cases. Mere presence of the accused on the premises, or simply his proximity to the drug, does not itself enable such a deduction. Nor is mere association with another, standing alone, enough even when the other is known to possess the drug. But, as has frequently been held, presence, proximity or association may establish a prima facie case of drug-possession when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part.' *Page 431 
 "Proximity to illegal drugs, presence in the property where they are located, or mere association with persons who do control the drugs may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating surrounding circumstances."
German, 429 So.2d at 1141-42.
The following evidence presented by the State was sufficient to establish that the appellant had constructive possession of the cocaine:
 1) A confidential informant had seen the appellant with the other males selling cocaine and had given Officer Whittington information about the appellant and the others in the car.
 2) The appellant was driving the vehicle, which he knew contained cocaine. He was aware that Dukes, a passenger in the vehicle, had been selling cocaine.
 3) The appellant was present in the car with a passenger who later ran from the police and discarded drugs as he was running.
The appellant's proximity to the cocaine, along with the evidence connecting the appellant with the incriminating circumstances was sufficient to support a finding of constructive possession. The above conduct is all evidence of guilty knowledge on the part of the appellant.
For the above reasons the judgment is due to be affirmed.
AFFIRMED.
All the Judges concur.